■ McMahan & Company et al., Respondents-Appellants, v Saul Bass et al., Appellants-Respondents. [673 NYS2d 19] —Order, Supreme Court, New York County (Charles Ramos, J.), entered February 21, 1997, which, *inter alia*, granted plaintiffs' cross motion for summary judgment on the issue of liability as to the first cause of action and denied defendants' motion to dismiss that cause of action, denied plaintiffs' cross motion to dismiss the second and fourth counterclaims and granted, in part, plaintiffs' cross motion to dismiss the third counterclaim, unanimously modified, on the law, to the extent of denying plaintiffs' cross motion for summary judgment on the issue of liability as to the first cause of action and granting defendants' motion for summary judgment as to that cause of action, and granting plaintiffs' cross motion to dismiss the second, third and fourth counterclaims and, except as so modified, affirmed, without costs.

McMahan, Brafman, Morgan & Co. (MBM) is a partnership in which Saul Bass and other defendants had purchased a limited partnership interest during the period from 1980 to 1982. D. Bruce McMahan is the general partner of MBM. In 1992, defendants (and others) commenced a Federal court action against MBM and its general partner, McMahan. In the Federal action, defendants alleged that they were defrauded in connection with their original purchases of limited partnership interests in MBM. They further alleged that they were defrauded into entering into contracts to sell their limited partnership interests to McMahan in anticipation of an Internal Revenue Service audit of MBM's 1980 tax returns. The audits were to be conducted pursuant to the Tax Reform Act of 1984, which created potentially significant tax liabilities on persons owning limited partnership interests. In connection with the transfer of their interests to McMahan, each defendant, as seller, executed a Contract of Sale and Security agreement (the contracts) with MBM, as partner, and with McMahan, as purchaser.

The Federal action was dismissed on the ground that the claims advanced by defendants herein were barred by the as-

signments and releases in the contracts. Plaintiffs (defendants in the Federal action) thereupon filed this lawsuit, alleging, *inter alia*, that the Federal action was brought by defendants in violation of the covenant not to sue contained in the respective contracts. Plaintiffs McMahan & Company (formerly known as MBM) and McMahan seek payment of attorneys' fees in connection with the defense of the Federal action.

Defendants assert four counterclaims against plaintiffs in which they seek, respectively: (1) damages for breach of contract for failure to pay the entire purchase price due under the contracts; (2) damages for breach of contract for failure to establish the special trust account or to fund it sufficiently to ensure payment of the entire purchase price due on the contracts; (3) judgment declaring the nonrecourse provisions of the contracts unenforceable together with damages for breach of contract—based upon McMahan's fraudulent misrepresentation, bad faith and breach of fiduciary duty—by causing MBM to incur substantial and excessive legal fees and other expenses in defense of Internal Revenue Service claims and by wrongfully impairing defendants' security interests (as evidenced by certain annexed letters from McMahan to the defendants which described operating losses and expenses); and (4) damages for willful and malicious breach of contract for failure to perform their obligations under the contracts.

The assignment and release clauses contained in the contracts constitute releases, not implied covenants not to sue, because they relate to claims extant at the time the parties entered into the contracts. A release is a provision that intends a present abandonment of a known right or claim. By contrast, a covenant not to sue also applies to future claims and constitutes an agreement to exercise forbearance from asserting any claim which either exists or which may accrue (*Wilder v Pennsylvania R. R. Co.*, 245 NY 36, 39 [covenant not to sue found where no liability existed at the time of the parties' agreement]; *see also, Colton v New York Hosp.*, 53 AD2d 588, 589; *Stone v National Bank & Trust Co.*, 188 AD2d 865, 867). The provisions at issue do not speak to the future, but rather are related to known events that had transpired prior to execution of the contracts, namely the Internal Revenue Service audit and the operation of the MBM partnership. Absent a covenant not to sue, there exists no implicit agreement by defendants to pay the attorneys' fees, as would result from breach of a covenant not to sue.

Defendants assert four counterclaims, each of which alleges that defendants have not been paid the full price specified in

the contracts. As the courts of this State have observed on numerous occasions, restating a cause of action for breach of contract in various guises does not enhance the pleading (*Stendig, Inc. v Thom Rock Realty Co.*, 163 AD2d 46, 47 [assessment of merits not furthered by introduction of extraneous theories and unnecessary defendants]; *see also, Megaris Furs v Gimbel Bros.*, 172 AD2d 209, 211 [single cause of action for breach of contract stated eight different ways]).

With respect to the first counterclaim, we agree with Supreme Court that defendants have a viable claim for breach of contract by reason of plaintiffs' failure to pay the entire purchase price due under the contracts. Any recovery, however, is limited to the assets pledged as security for the payment of plaintiffs' obligations pursuant to the nonrecourse provisions of the contracts.

The remainder of the counterclaims simply elaborate on the breach of contract action. The second counterclaim is predicated on plaintiffs' failure to fund a trust account to ensure payment of the purchase price. Like the first counterclaim, it alleges breach of contract and seeks recovery of the purchase price. By identifying the mechanism by which the failure to ensure compensation arose, it provides additional factual detail. Nevertheless, it merely restates the breach of contract claim.

The third counterclaim variously alleges breach of the duty of good faith, misrepresentation and breach of fiduciary duty, without any attempt to distinguish or separately state the claims (CPLR 3014). We agree with Supreme Court that the allegation of a breach of the duty of good faith is duplicative of the cause of action for breach of contract since, where appropriate, the courts will imply the obligation of good faith and fair dealing between parties to a contract (*see, Murphy v American Home Prods. Corp.*, 58 NY2d 293, 304 [citing *Wood v Duff-Gordon*, 222 NY 88; *Pernet v Peabody Eng'g Corp.*, 20 AD2d 781]; *Apfel v Prudential-Bache Sec.*, 183 AD2d 439, *mod on other grounds* 81 NY2d 470). However, the claim of misrepresentation is also duplicative because the same monetary relief is sought (*Rockefeller Univ. v Tishman Constr. Corp.*, 240 AD2d 341 [identical benefit of the bargain recovery sought in fraudulent misrepresentation and breach of contract causes of action]). Furthermore, the alleged tortious conduct is innate to the performance of the contract. "In the absence of a breach of a duty, independent of the contract, which results in injury, a tort claim will not lie (*Clark-Fitzpatrick Inc. v Long Is. R. R. Co.*, 70 NY2d 382, 389)" (*IBM Credit Fin. Corp. v Mazda Motor Mfg. [USA] Corp.*, 152 AD2d 451, 453; *see also, SSDW Co. v*

*Feldman-Misthopoulos Assocs.*, 151 AD2d 293, 295). As stated long ago in *Rich v New York Cent. & Hudson Riv. R. R. Co.* (87 NY 382, 398), "It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty."

Defendants have not pursued their allegation of breach of fiduciary duty asserted in the third counterclaim, presumably because termination of their status as limited partners ends their fiduciary relationship with the partnership (*see, Matter of Silverberg [Schwartz]*, 81 AD2d 640, 641). In any event, the obligation to fund a trust account is contractual and contingent upon the existence of profits from which funding can be obtained. Whether the partnership ever made a profit and, as a related matter, whether the partnership made improper charges against income is appropriately resolved in an accounting, which is available as a matter of law (Partnership Law § 99 [1] [b]; *see, Adam v Cutner & Rathkopf*, 238 AD2d 234, 241; *see also, White Light Prods. v On The Scene Prods.*, 231 AD2d 90, 94). However, the record is silent as to whether or not an accounting was ever demanded, and defendants have neither requested nor demonstrated their entitlement to such relief. Absent the fulfillment of the requisite criteria, there is no basis upon which to enlist the intervention of a court of equity to vindicate the right to an accounting (*Raymond v Brimberg*, 99 AD2d 988, 989, *appeal dismissed* 64 NY2d 775).

The fourth cause of action, alleging willful and malicious failure to perform contractual obligations, states no cognizable cause of action (*Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 192 AD2d 83, 89-90, *affd* 84 NY2d 430). As this Court stated the principle in *Briefstein v Rotondo Constr. Co.* (8 AD2d 349, 351), "An intention not to perform does not bring on heavier damages than actual nonperformance". Concur—Wallach, J. P., Rubin, Williams, Mazzarelli and Saxe, JJ.