**U.S. NETWORK SERVICES, INC., Plaintiff,**

v.

**FRONTIER COMMUNICATIONS OF THE WEST, INC., Defendant.**

**No. 99–CV–6146L.**

United States District Court, W.D. New York.

Sept. 26, 2000.

Joel R. Dichter, Klein, Zelman, Rothermel & Dichter, L.L.P, New York City, for U.S. Network Services, Inc., Plaintiff.

Eric A. Linden, Jaffe, Raitt, Heuer & Weiss, Detroit, MI, Michael J. Shortley, III, Frontier Corp., Rochester, NY, for Frontier Communications of West, Inc., Defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

## INTRODUCTION

Robert Louis Stevenson's description of marriage as "a field of battle"[1] aptly describes the contractual "marriage" between the parties in this case, who have twice appeared to be headed for "divorce," only to reconcile at the last moment. They have returned to this court now for the third time, and it appears that this time the breakup is final.

The parties to this action, plaintiff U.S. Network Services, Inc. ("USN") and defendant Frontier Communications of the West, Inc. ("Frontier"), both of whom are in the telephone services industry, first appeared before this court in 1997. USN had commenced a lawsuit against Frontier, asserting various causes of action stemming from a dispute between the parties over Frontier's provision of certain long-distance telephone services to USN, pursuant to a carrier agreement that the parties had entered into in 1996. USN alleged that Frontier had not provided those services in accordance with its obligations under the agreement, and sought damages and injunctive relief, including a preliminary injunction.

On November 17, 1997, the day scheduled for oral argument of USN's motion for a preliminary injunction, the parties placed a settlement on the record. Among other things, the settlement agreement called for the execution of a new contract, which would again provide for Frontier to provide USN with certain telephone services. Since some details of the settlement remained unresolved, though, the case was to remain open pending a final settlement.

On May 3, 1998, however, USN returned to this court, simultaneously filing a new complaint, and moving in the prior action to enforce the settlement agreement. Apparently Frontier had initially accepted, but then changed its mind and refused to accept, a certain clause in the proposed settlement agreement. USN contended that although the parties had not worked out every detail of their settlement agreement on November 17, 1997, they had nevertheless entered into a binding settlement, and that Frontier's about-face refusal to accept the disputed provision in the proposed written settlement agreement was contrary to the parties' prior agreement to settle.

The second lawsuit, and the then-still-pending first lawsuit, also settled. This time, the parties did enter into a new carrier agreement, dated May 14, 1998, which called for Frontier to provide certain services to USN over a five-year period. Based upon that settlement, both cases were closed in May 1998.

---

1. "Marriage is like life in this—that it is a field of battle, and not a bed of roses." *Virgi-* *nibus Puerisque,* I, ch. 1 (1881).

That seemingly permanent settlement agreement, however, turned out to be only a temporary truce. On April 8, 1999, USN commenced its third action in this court against Frontier. USN again alleges that Frontier has not lived up to its obligations under the carrier agreement in various respects. The complaint asserts causes of action for breach of contract, breach of warranty, and misrepresentation. On each cause of action, USN seeks liquidated damages of $1,850,000, plus $500,000 for the loss of a "service credit" in that amount, which USN was supposed to receive under the carrier agreement if it achieved a certain minimum annual number of minutes. USN alleges that Frontier's actions have made it impossible for USN to achieve that minimum.

Frontier has filed a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). At oral argument on that motion on March 16, 2000, counsel for USN requested leave to file a motion to amend the complaint. I granted that request, and reserved decision on the motion to dismiss. USN filed its motion to amend, together with the proposed amended complaint, on April 10, 2000. The proposed amended complaint adds a claim for compensatory (as opposed to liquidated) damages, and modifies the misrepresentation claim in some respects. Frontier opposes the motion to amend.

## DISCUSSION

### I. Motion for Leave to Amend

Although I directed USN to file a motion for leave to amend the complaint, I did so only for the sake of convenience so that Frontier could raise whatever substantive objections it had to the amended complaint. Because Frontier has not yet filed a responsive pleading for purposes of Rule 15(a), USN may amend the complaint as of right. *Cerasoli v. Xomed, Inc.*, 952 F.Supp. 152, 161 (W.D.N.Y.1997). I will

therefore "grant" the motion to amend, and treat Frontier's response to that motion as part of its motion to dismiss the complaint.[2]

## II. Motion to Dismiss

### A. Misrepresentation Claim

In the fifth cause of action, USN alleges that in the settlement agreement entered into in May 1998, "Frontier induced USN to forego its remedies in the prior actions, and forego their ability to utilize other long distance carrier, [sic] with the promise that Frontier would provide USN with quality 800/888 service." Amended Complaint ¶ 41. USN alleges that it relied on those representations, and that Frontier has breached its obligation to perform as represented. USN seeks compensatory damages in an amount to be determined at trial, but which USN believes to exceed $7,000,000.

Frontier contends that this claim cannot stand because it is based on the same allegations as USN's claims for breach of contract and breach of warranty. In support of that assertion, Frontier cites authority that under New York law, a breach of contract cannot give rise to a tort claim unless the defendant has violated some duty independent of the contract itself. In response, USN states that this claim is based not just on Frontier's alleged breaches of the carrier agreement, but on USN's detrimental reliance on Frontier's promises about the quality of its service, which induced USN to abandon its lawsuit against Frontier and to forego seeking alternative service in the marketplace.

The rule in New York is that a fraud claim should be dismissed as redundant when it merely restates a

---

2. In its brief in opposition to the motion to amend, defendant requests that should leave to amend be granted, the court direct plaintiff to pay Frontier's costs in preparing its motion to dismiss. That request is denied. The amendment of the complaint did not so completely change the issues in this case as to render defendant's efforts in preparing its Rule 12(b)(6) motion to be for naught, or to cause defendant to prepare a completely new motion to dismiss, and I therefore see no basis to award costs to defendant.

breach of contract claim, *i.e.*, when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract. By contrast, a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract. For example, if a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even though the same circumstances also give rise to the plaintiff's breach of contract claim. Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty.

*First Bank of the Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 291–92, 690 N.Y.S.2d 17 (1st Dep't 1999) (citations omitted).

██ Applying this rule to the case at bar, I find that plaintiff's misrepresentation claim must be dismissed. The gist of the claim is simply that Frontier falsely represented that it would provide a certain level of services in the future, and that it did not live up to that promise. This claim is duplicative of plaintiff's contract and warranty claims, and seeks the same compensatory damages as those claims. *See Page v. Muze, Inc.*, 270 A.D.2d 401, 705 N.Y.S.2d 383, 384 (2d Dept. 2000) (fraud claims were properly dismissed as duplicative of contract claims, since they alleged in essence that defendants promised to give plaintiff equity interest in company, and that they reneged on that promise); *Boone Associates, L.P. v. Oaster*, 257 A.D.2d 370, 371, 683 N.Y.S.2d 47 (1st Dept. 1999) ("the mere additional allegation that the [defendant] did not intend to keep his promises when he made them was insufficient to convert the underlying claim for breach of promise into fraud"); *Orix Credit Alliance, Inc. v. R.E. Hable Co.*, 256 A.D.2d 114, 115, 682 N.Y.S.2d 160 (1st Dept. 1998) ("a viable claim of fraud con-

cerning a contract must allege misrepresentations of present facts (rather than merely of future intent) that were collateral to the contract and which induced the allegedly defrauded party to enter into the contract. Allegations that a party entered into a contract without intent to perform do not state a cause of action for fraud") (citation omitted); *McMahan & Co. v. Bass*, 250 A.D.2d 460, 462, 673 N.Y.S.2d 19 (1st Dept. 1998) ("the claim of misrepresentation is ... duplicative [of the breach of contract claim] because the same monetary relief is sought"), *leave to appeal dismissed in part, denied in part*, 92 N.Y.2d 1013, 684 N.Y.S.2d 484, 707 N.E.2d 439 (1998); *J.E. Morgan Knitting Mills, Inc. v. Reeves Bros., Inc.*, 243 A.D.2d 422, 423, 663 N.Y.S.2d 211 (1st Dept. 1997) ("Plaintiffs' cause of action for fraud ... was properly dismissed as duplicative of plaintiffs' cause of action for breach of contract. The fraud alleged is based on the same facts as underlie the contract claim and is not collateral to the contract and no damages are alleged that would not be recoverable under a contract measure of damages"); *Rockefeller University v. Tishman Const. Corp. of New York*, 240 A.D.2d 341, 342, 659 N.Y.S.2d 460 (1st Dept. 1997) ("the motion court correctly held that Rockefeller's misrepresentation and fraudulent misrepresentation claims against Tishman are duplicative of its breach of contract cause of action since the identical contractual benefit of the bargain recovery is sought"), *leave to appeal denied*, 91 N.Y.2d 803, 668 N.Y.S.2d 558, 691 N.E.2d 630 (1997).

Plaintiff also states that should the court find its misrepresentation claim deficient, USN requests leave to replead it. Plaintiff has not explained, however, nor do I see, how the flaw in this claim could be cured simply by repleading it. The fact is that this claim is based on USN's allegation that Frontier made certain representations about future performance, and that it did not perform as promised. No matter what words are used to plead this claim, it would remain duplicative of plain-

tiff's other claims, and therefore subject to dismissal.

## B. Breach of Contract and Breach of Warranty Claims

■ Frontier also contends that USN's contract and warranty claims, which seek liquidated damages under the carrier agreement, should be dismissed because they are premature. According to Frontier, USN seeks damages for minutes of telephone usage that Frontier agreed to, but allegedly has failed to, provide, over the entire five-year length of the carrier agreement. Frontier contends that since the agreement provides that it is to remain in effect until the year 2003, it is impossible at this point for USN to establish these damages, because USN cannot prove that it will be-unable to use any particular number of minutes in the future.

In response, USN states that enough time has passed to provide an evidentiary basis upon which to establish its damages, and that those damages are easily calculable. Plaintiff contends that it should not be forced to wait five full years before obtaining damages.

While I do not believe that USN is entitled to seek damages under the liquidated damages provision for the full five-year term of the contract, I also do not believe that USN is barred from seeking *any* damages under this clause. Accepting the truth of USN's allegations, at least for some period of time it did attempt to utilize Frontier's services, but Frontier's failure to provide services in accordance with industry standards, in breach of its contractual obligations, prevented USN from utilizing the annual minimum number of minutes.

It is true that this action was commenced prior to the expiration of the first year of the May 1998 carrier agreement. The complaint also alleges that "[a]s a result of Frontier's actions and omissions, the parties ceased doing business [with each other] after only a few months." Amended Complaint ¶ 10. I do not believe, however, that this renders this claim premature. At most, these facts may present certain issues regarding whether USN has carried its burden with respect to damages. For example: the minimum number of minutes for the first year of the agreement was 55 million. If the proof shows that the parties did business with each other for only three months, and that USN utilized only one million minutes during that time, that does not necessarily mean that USN is entitled to damages based on 54 million unused minutes for the first year. Likewise, the factfinder may not necessarily simply extrapolate that one-million-minutes figure over the remaining three quarters of the first year and conclude that, had the parties continued to do business, USN would only have used four million minutes that year. These matters must be determined based upon all the evidence presented.

In addition, while Frontier argues that USN cannot establish damages until the end of each year of the agreement, it now appears that USN is *never* going to utilize any more minutes provided by Frontier. The parties do not dispute that they have completely ceased doing business with each other and have no intention of resuming their relationship. The effect of that fact upon USN's claim for damages remains to be seen; perhaps if USN simply walked away from the relationship without giving Frontier an adequate opportunity to cure any alleged breach, USN will be able to recover only a reduced amount, or even no damages. Since it is clear that the parties' relationship has terminated, however, I do not find USN's claim to be premature.

All of these matters, then, are issues of proof to be sorted out at trial. If in fact Frontier did not provide services at a level commensurate with its obligations under the agreement, such that USN had no choice but to turn elsewhere for such services, it might be inequitable to allow Frontier to avoid paying liquidated damages under the contract on the ground that the parties' relationship never lasted a full

**358**

year. USN, however, has the ultimate burden of demonstrating its damages with sufficient certainty to allow the trier of fact to arrive at a particular award.

■ In reaching this conclusion, I am mindful that a court should not dismiss a complaint under Fed.R.Civ.P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). While it is true that in order to recover damages, a plaintiff must prove those damages to a "reasonable certainty," *Schonfeld v. Hilliard,* 218 F.3d 164, 172 (2d Cir. 2000), that standard "does not require absolute certainty" or "mathematical precision." *Ashland Mgt. Inc. v. Janien,* 82 N.Y.2d 395, 403, 604 N.Y.S.2d 912, 624 N.E.2d 1007 (1993). Since this case is only at the pleading stage, dismissal on the ground that plaintiff's alleged damages are too speculative is inappropriate.

■ Frontier also contends that plaintiff's breach of warranty claim should be dismissed because it is duplicative of the breach of contract claim. Frontier has submitted no authority that a warranty claim should be dismissed for that reason. *See Fink v. DeClassis,* 745 F.Supp. 509, 515 (N.D.Ill.1990) (claim of breach of warranty was not redundant of claim of breach of contract, even though claims sought essentially the same relief and plaintiff could not obtain duplicative recovery, because plaintiff was entitled to assert alternative

theories and could not be compelled to elect one remedy over another in the absence of prejudice to defendant). Moreover, the complaint sets forth specific warranties in the carrier agreement as the basis for the breach of warranty claim. *See* Amended Complaint ¶¶ 35, 36. Although plaintiff clearly cannot obtain duplicative damage awards, I see no basis to force plaintiff to elect one theory of recovery over the other at this time.[3]

### CONCLUSION

Plaintiff's motion for leave to file an amended complaint (Docket Item 13) is granted. Plaintiff shall have ten (10) business days from the date of entry of this Decision and Order to file its amended complaint.

Defendant's motion to dismiss the complaint (Docket Item 4) is denied.

IT IS SO ORDERED.

---

**3.** I also note that defendant's brief in opposition to USN's motion to amend states that USN's claims for compensatory damages are "likely" barred under the carrier agreement, and that if leave to amend is granted, USN should be required to make a more definite statement regarding the source and nature of its damages. *See* Defendant's Response to

Plaintiff's Motion to Amend at 5–6. A claim should not be dismissed under Rule 12(b)(6) because it is "likely" barred, and I decline to do so. I also believe that the amended complaint is sufficient as pleaded, and that the specifics of plaintiff's claims for compensatory damages can better be fleshed out through discovery.