D. Bruce McMAHAN, Nemesis Veritas, f.k.a. McMahan & Company, Plaintiffs-Appellants,

v.

William A. TOTO, Defendant-Appellee.

D. Bruce McMahan, Nemesis Veritas, f.k.a. McMahan & Company, Plaintiffs-Appellants, Cross-Appellees,

v.

William A. Toto, Defendant-Appellee, Cross-Appellant.

Nos. 00-10323, 00-14728.

United States Court of Appeals,

Eleventh Circuit.

July 10, 2001.

Appeals from the United States District Court for the Southern District of Florida. (No. 96-08294-CV-DMM), Donald M. Middlebrooks, Judge.

Before CARNES and MARCUS, Circuit Judges, and HAND[*], District Judge.

CARNES, Circuit Judge:

Along with several other limited partners in McMahan, Brafman, Morgan & Company ("MBM"), William A. Toto filed a RICO action in federal court in New York against that company and D. Bruce McMahan after the Internal Revenue Service imposed penalties and disallowed deductions related to the company that he and the other limited partners had claimed. Several of the limited partners in that suit were dismissed, because their claims were precluded by release and assignment provisions contained in agreements between them and McMahan, MBM's principal general partner, in which he bought back their partnership interests. McMahan and MBM subsequently brought suit in state court against those limited partners alleging that by participating in the RICO action they had breached the release and assignment provisions of their agreements with him. The state court granted summary judgment in favor of the limited partners.

Before summary judgment was granted in the state court action, McMahan and MBM filed this diversity jurisdiction lawsuit in the Southern District of Florida against Toto for tortious interference with contractual relations, based on his actions in instituting the RICO action and encouraging the limited partners who were later dismissed to participate in that lawsuit. The district court granted summary judgment to Toto

[*]Honorable William B. Hand, U.S. District Judge for the Southern District of Alabama, sitting by designation.

and entered various orders relating to fees, costs, and sanctions. McMahan and MBM then appealed, and Toto cross-appealed.[1]

In order to dispose of this appeal, an issue we must decide is whether the state court's decision collaterally estops McMahan and MBM from establishing that the dismissed limited partners breached their agreements, which is an essential element of the tortious interference claim. If it does, then a second and third issue are presented. The second issue is whether the district court abused it discretion by not imposing sanctions against MBM and McMahan or their counsel pursuant to Fla. Stat. § 57.105 and 28 U.S.C. § 1927. The third issue is whether under Florida's offer of judgment statute Toto is entitled to recover the attorney's fees he incurred since the making of an offer to settle the tortious interference claim.

As we will soon explain in full, we decide that collateral estoppel does bar the tortious interference claim, and that the district court did not abuse its discretion in declining to award sanctions. However, we decide that the district court erred in awarding attorney's fees pursuant to the offer of judgment statute.

# I. BACKGROUND

## A. FACTS

In September of 1980, MBM[2] was formed for the purpose, among other things, of trading government securities and commodities. From 1980 through 1982, between 300 and 400 investors purchased limited partnership interests in MBM, lured by the promise of significant tax benefits. Toto bought in for $200,000 and received one partnership unit in MBM in return.

However, the promised tax benefits were, like many things in life, too good to be true, and the IRS subsequently disallowed many of the deductions claimed by the limited partners relating to MBM and imposed draconian penalties. The IRS notified Toto in late 1987 of its audit of MBM, and Toto eventually paid approximately $630,000 to settle his dispute regarding deductions he claimed relating to his investment in MBM.

Eventually, McMahan offered to buy back the interests of all of the MBM limited partners. As part of the sale of their interest to McMahan, each tendering limited partner executed a contract of sale and security agreement providing for the assignment to McMahan of all rights to any cause of action the limited

---

[1] Although there are two appeals with two different case numbers before us, we have consolidated the appeals for decisional purposes.

[2] MBM changed its name to McMahan & Company on January 16, 1985, and to Nemesis Veritas, L.P. on July 30, 1996. To avoid confusion we will use the old name throughout this opinion.

partner may have in connection with (1) the original sale of the partnership interest to the limited partner, and (2) the conduct of MBM's business prior to the sale of the limited partner's interest. Each contract also provided that each tendering limited partner released MBM and its general partners from all claims arising from disallowance by the IRS of any tax benefits stemming from MBM.[3] Each contract provided that it would be governed by New York law. On December 31, 1984, McMahan bought back the interests of more than 80% of the limited partners of MBM. Toto, however, did not sell his limited partnership interest to McMahan.

In 1988 or early 1989, Toto contacted the law firm of Biegel & Sandler ("B&S") about filing a lawsuit against MBM and McMahan. Not prepared to fund the litigation himself, however, Toto contacted other MBM limited partners beginning in 1990 regarding his intention to sue and inquiring as to their interest in joining him. In June of 1991 B&S also contacted the limited partners, stating that it required a minimum $25,000 retainer to pursue the action. B&S proposed that each limited partner contribute an amount equal to 1% of his or her investment in MBM towards the retainer, to be credited against a 1/3 contingency fee for B&S.

Eventually, fifteen limited partners retained B&S and filed suit in June of 1992 against MBM and McMahan (and others), alleging civil violations of the Racketeer Influenced and Corrupt Organizations Act and various state law theories of recovery ("the RICO Action"), claiming damages from the loss of their limited partnership investments, the disallowance of tax deductions, and imposition of penalties. The suit was filed in the United States District Court for the District of New Jersey, but that court determined that venue was inappropriate and the case was transferred to the Southern District of New York in July of 1993.

However, some of the limited partners who had joined in the RICO Action had, as part of the sale

---

[3]Paragraph 13 of each contract provides, in relevant part:

> 13. Assignment and Release of Claims. The Seller hereby assigns to the Purchaser all of his right, title and interest in and to any and all causes of action, suits, claims and demands whatsoever against any party which the Seller ever had, now has, or hereafter can, shall or may have, by reason of or in connection with the sale of the Interest by the Partnership to the Seller and (b) [sic] the conduct of the Partnership's business prior to the date of the Seller's tender of his Interest, but excluding claims in connection with the solicitation of Interests pursuant to which this Agreement is being executed.

> The Seller hereby releases the Partnership and the general partners thereof, and, to the fullest extent applicable, their respective heirs, executors, successors, employees, agents and assigns, from all causes of action, suits, claims and demands whatsoever which the Seller ever had, now has, or hereafter can, shall or may have, by reason of any damages arising from any and all claims which might arise upon disallowance by the Internal Revenue Service of tax benefits previously taken by the Partnership.

of their interests back to McMahan, signed a contract whereby they assigned and released certain rights. MBM and McMahan moved for summary judgment against these limited partners, whom we will call "the Releasors," arguing that they were prevented from bringing such an action by the terms of the contracts. On February 7, 1995, the district court granted the motion, rejecting the Releasors' argument that the assignments and releases were invalid because they were induced by fraud, and holding that the asserted claims were within the scope of the assignments and/or releases given by the Releasors. *See Toto v. McMahan, Brafman, Morgan & Co.,* No. 93 CIV. 5894 (JFK) (S.D.N.Y. Feb. 7, 1995).

On January 5, 1996, MBM and McMahan filed a complaint against the Releasors in the Supreme Court of New York which asserted, among other things, a cause of action for breach of contract based on the Releasors' participation in the RICO Action despite the assignment and release provisions contained in the contracts.[4] MBM and McMahan sought damages in the amount of $30,000,000 as a result of the breach of their agreements by the Releasors. On May 19, 1998, the Appellate Division of the Supreme Court of New York held that the Releasors were entitled to summary judgment on the breach of contract cause of action, because the assignment and release provisions of the contracts constituted releases, and not covenants not to sue:

> The assignment and release clauses contained in the contracts constitute releases, not implied covenants not to sue, because they relate to claims extant at the time the parties entered into the contracts. A release is a provision that intends a present abandonment of a known right or claim. By contrast, a covenant not to sue also applies to future claims and constitutes an agreement to exercise forbearance from asserting any claim which either exists or which may accrue ... The

---

[4]The complaint alleges, in relevant part:

> *AS AND FOR A FIRST CAUSE OF ACTION*
>
> (Breach of Contract)
>
> ...
>
> 21. Notwithstanding their execution of the Contracts of Sale and Sales Agreement, and the releases contained therein, defendants proceeded to breach their agreements by suing plaintiffs and others in the United States District Court, District of New Jersey and the United States District Court, Southern District of New York, for alleged violations of the Racketeer Influenced and Corrupt Organizations Act, fraud, breach of fiduciary duty and negligent misrepresentation in the sale of said limited partnership interests.
>
> ...
>
> 24. By reason of defendants' breach of the aforementioned agreements, plaintiffs have sustained damages in an amount in excess of $30,000,000 for which defendants are jointly and severally liable.

provisions at issue do not speak to the future, but rather are related to known events that had transpired prior to execution of the contracts, namely the Internal Revenue Service audit and the operation of the MBM partnership. Absent a covenant not to sue, there exists no implicit agreement by defendants to pay the attorneys' fees, as would result from breach of a covenant not to sue.

*McMahan & Co. v. Bass,* 250 A.D.2d 460, 673 N.Y.S.2d 19, 21 (N.Y.App.Div.1998). The parties filed a Stipulation of Discontinuance with Prejudice on September 2, 1999, thereby foreclosing any further appeal.

## B. PROCEDURAL HISTORY

Not content with merely suing the Releasors, MBM and McMahan filed this lawsuit against Toto on May 6, 1996. Count I of their Second Amended Complaint alleged that Toto committed tortious interference with contractual relations by inducing the Releasors to participate in the RICO Action, even though he knew at the time that they had by the terms of the contracts released MBM and McMahan from any and all claims. Count II alleged Toto had engaged in malicious prosecution by prosecuting the RICO Action with full knowledge that it was barred by the assignments and releases contained in the contracts and without the consent of one of the Releasors.

On March 29, 1999, the district court granted Toto's motion for summary judgment as to Count II, the malicious prosecution claim, and that part of the case is not at issue in this appeal. But at the same time the court denied Toto's motion for summary judgment on Count I, the tortious interference claim. On May 11, 1999, acting pursuant to Fla. Stat. § 45.061 and, in the alternative, Fla. Stat. § 768.79, Toto made an offer to settle for $100 the litigation on Count I. His offer read as follows:

> Defendant, WILLIAM A. TOTO, hereby offers pursuant to Fla. Stat. § 45.061 to settle this case for the amount of $100.00 (One Hundred Dollars) upon a stipulation for dismissal, or, alternatively, pursuant to Fla. Stat. § 768.79, at Plaintiff's election, to allow judgment to be taken against him in the total sum of $100.00 (One Hundred Dollars), in full and final resolution of all claims made in this action.

MBM and McMahan did not accept the offer.

On October 29, 1999, the district court again denied Toto's renewed motion for summary judgment as to Count I, the tortious interference claim. But on December 21, 1999, although nothing changed, the district court granted summary judgment to Toto on that claim. The basis of the district court's decision was that the New York state court decision in *Bass* collaterally estopped it from finding that the Releasors had breached their contracts, an essential element of the tortious interference claim against Toto.

Thereafter, Toto filed a motion (1) under Fla. Stat. § 57.105 for attorney's fees, (2) under 28 U.S.C. § 1927 for fees and costs due to the vexatious multiplication of proceedings, and (3) under Fla. Stat. § 768.79

for fees and costs.[5]  The district court denied the motion for fees and costs pursuant to Fla. Stat. § 57.105 and 28 U.S.C. § 1927, but granted the one for fees and costs pursuant to Fla. Stat. § 768.79 and ordered MBM and McMahan to pay Toto a total of $260,034.29.  MBM and McMahan have appealed the judgment against them on their Count I tortious interference claim and the order awarding fees and costs against them under Fla. Stat. § 768.79, while Toto has cross-appealed the order denying him fees and costs under Fla. Stat. § 57.105 and 28 U.S.C. § 1927.

## II. DISCUSSION

We begin our discussion with MBM and McMahan's appeal from the summary judgment against them on the tortious interference claim, because if they are entitled to reversal of it the costs issues will be moot.

### A. COLLATERAL ESTOPPEL

The district court granted summary judgment against MBM and McMahan on their tortious interference claim because it concluded that they were collaterally estopped from pursuing that claim by the decision against them in *McMahan & Co. v. Bass,* 250 A.D.2d 460, 673 N.Y.S.2d 19, 21 (N.Y.App.Div.1998).  In reaching that conclusion the district court followed a chain of reasoning with the following five links.  First, Virginia law governs the tortious interference claim in this case.  Second, under Virginia law in order to succeed on such a claim a plaintiff must show that the defendant engaged in "intentional interference inducing or causing a breach or termination of the relationship," *Krantz v. Air Line Pilots Ass'n,* 245 Va. 202, 427 S.E.2d 326, 328 (1993), which means that another party must have breached a contract with the plaintiff or terminated a contractual relationship with the plaintiff.  Third, Virginia law gives a judgment from another jurisdiction the same preclusive effect it would receive in that jurisdiction. *See Coghill v. Boardwalk Regency Corp.,* 240 Va. 230, 396 S.E.2d 838, 840 (Va.1990); *see generally* 28 U.S.C. § 1738 (state court judgments have the same preclusive effect in federal court they have in the state where the judgment was rendered).  Fourth, under the law of New York, where the *Bass* decision was issued, a party is collaterally estopped from relitigating in another proceeding an issue necessarily decided against

---

[5]Toto also filed a motion for costs (other than attorney's fees) under Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920, which was granted in the amount of $4,799.33.  MBM and McMahan make no argument that costs were incorrectly taxed against them in that regard, and accordingly no issue concerning that award is before us in this appeal. *Federal Sav. & Loan Ins. Corp. v. Haralson,* 813 F.2d 370, 373 n. 3 (11th Cir.1987) ("[I]ssues that clearly are not designated in the appellant's brief normally are deemed abandoned.").

that party in a prior proceeding. *See Conte v. Justice,* 996 F.2d 1398, 1400-03 (2d Cir.1993). Fifth, in *Bass* the New York appellate court necessarily decided against MBM and McMahan the issue of whether the Releasors had breached a contractual undertaking not to sue MBM and McMahan. It follows from those five premises that because of the *Bass* decision MBM and McMahan are collaterally estopped from asserting that the Releasors breached a contractual obligation not to sue them, and without any breach MBM and McMahan's claim that Toto wrongfully induced a breach must fail.

MBM and McMahan do not deny that the district court's conclusion logically follows if the five premises we have set out for it are correct, nor do they take issue with the first four of those premises. The only one that MBM and McMahan dispute is the fifth premise—they contend that the *Bass* decision did not necessarily decide that there was no breach by the Releasors of a contractual obligation not to sue MBM and McMahan. Like the district court, we disagree.

In *Bass,* the complaint MBM and McMahan filed in New York state court against the Releasors claimed that by participating in the RICO Action in federal court the Releasors had breached agreements in the assignment and release provisions of their contracts with MBM and McMahan resulting in damages in the amount of $30,000,000. The Appellate Division of the Supreme Court of New York held that the agreements the Releasors had signed constituted releases, and not covenants not to sue. *Bass,* 673 N.Y.S.2d at 21. The result of the *Bass* litigation was that MBM and McMahan took nothing on their breach of contract claim. They lost on it. MBM and McMahan concede that they pleaded a breach of contract claim against the Releasors in *Bass* and that they did not prevail on it, but they maintain that somehow their contract claim was not decided; instead, they insist, in some unexplained way the contract claim was converted to one for attorney's fees only. How that could have happened is not entirely clear, and we conclude that it did not happen. Because the *Bass* court had a statutory duty to "dispose of all issues in the proceeding," N.Y. C.P.L.R. 7804(g), and the breach of contract claim was clearly raised in the pleadings, we think that claim actually was decided against MBM and McMahan in *Bass. See Grubb v. Public Utilities Comm'n of Ohio,* 281 U.S. 470, 477-78, 50 S.Ct. 374, 377-378, 74 L.Ed. 972 (1930) ("Omitting to mention that question in the opinion did not eliminate it from the case or make the judgment of affirmance any the less an adjudication of it."); *Nelson v. Swing-A-Way Mfg. Co.,* 266 F.2d 184, 187 (8th Cir.1959) ("The doctrine of collateral estoppel applies to matters necessarily decided in the former judgment even if there is no specific finding or reference thereto.").

Because we agree with the district court that MBM and McMahan are collaterally estopped from establishing in this lawsuit that the Releasors breached their contractual agreements, Toto is entitled to summary judgment on the tortious interference claim that he wrongfully induced them to do so. Our decision in this respect requires that we decide MBM and McMahan's appeal of the grant of costs and attorney's fees under Fla. Stat. § 768.79, and Toto's cross-appeal of the denial of attorney's fees under Fla. Stat. § 57.105 and the denial of sanctions under 28 U.S.C. § 1927. We start with the cross-appeal issues, which are the easiest ones to decide.

### B. 28 U.S.C. § 1927

We review the trial court's ruling on an award of sanctions under 28 U.S.C. § 1927 only for abuse of discretion. *Peterson v. BMI Refractories,* 124 F.3d 1386, 1390 (11th Cir.1997). As we have observed, the abuse of discretion standard of review recognizes that for the matter in question there is a range of choice for the district court and so long as its decision does not amount to a clear error of judgment we will not reverse even if we would have gone the other way had the choice been ours to make. *See In re Rasbury,* 24 F.3d 159, 168 (11th Cir.1994).

Toto, of course, contends that the district court's decision not to award him sanctions against counsel for MBM and McMahan under 28 U.S.C. § 1927 is a clear error of judgment. Section 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The district court refused to award sanctions under section 1927, stating simply that MBM and McMahan have not "unreasonably extended the proceedings."[6]

The plain language of section 1927 sets forth three requirements to justify an imposition of sanctions:

(1) an attorney must engage in "unreasonable and vexatious" conduct;

(2) such "unreasonable and vexatious" conduct must "multipl[y] the proceedings;" and

(3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct.

*Peterson,* 124 F.3d at 1396. The critical question in this case involves the first *Peterson* factor—whether the filing of this lawsuit was "unreasonable and vexatious" conduct.

On this record, we cannot say that the district court abused its discretion in answering that question

---

[6]The statute speaks of sanctions against counsel, *see* 28 U.S.C. § 1927, while the district court spoke of the actions of MBM and McMahan, which we take to be a shorthand reference to their counsel.

in the negative. Counsel for MBM and McMahan argued to the district court that the New York state court decision in *Bass* never decided the issue of whether the Releasors had breached their contracts by joining the RICO action. MBM and McMahan took the position that *Bass* had merely held that they were not entitled to attorney's fees, which did not necessarily mean there had been no breach of contract by the Releasors. The district court and this Court have rejected their position since this lawsuit was filed, but that merely means there is no merit to the position. Something more than a lack of merit is required for § 1927 sanctions or they would be due in every case. The opinion of the Appellate Division of the Supreme Court of New York in *Bass* is not entirely clear, and actually does offer some support for MBM and McMahan's interpretation of that opinion, although not enough to convince us their interpretation is correct. *See generally Bass,* 673 N.Y.S.2d at 20-21 (stating that "[MBM] and McMahan seek payment of attorneys' fees in connection with the defense of the [RICO Action]"). Not only that, but the district court twice denied summary judgment to Toto on his collateral estoppel theory before finally concluding that MBM and McMahan's reading of the *Bass* decision was wrong.

Given these circumstances, we cannot say that it was a clear error in judgment for the district court not to award § 1927 sanctions against counsel for MBM and McMahan. That does not mean we would have reversed the district court had it awarded sanctions. As we explained in *Rasbury,* under an abuse of discretion standard there will be circumstances in which we would affirm the district court whichever way it went. 24 F.3d at 168 ("Quite frankly, we would have affirmed the district court had it reached a different result, and if we were reviewing this matter *de novo,* we may well have decided it differently.").

## C. FLA. STAT. § 57.105

We turn now to the other part of Toto's cross-appeal, which is his contention that the district court erred in failing to award him attorney's fees against MBM and McMahan under Fla. Stat. § 57.105, the frivolous litigation statute. Generally, a district court's decision about whether to award attorney's fees is reviewed for an abuse of discretion, *see Am. Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 427 (11th Cir.1999), and, more specifically, a trial court's decision about whether to award attorney's fees under Fla. Stat. § 57.105 is reviewed only for an abuse of discretion. *Dep't of Health v. Curry,* 722 So.2d 874, 879 (Fla. 1st DCA 1998).

Section 57.105, as it read in May of 1996 when MBM and McMahan filed their complaint in this lawsuit, provided, in relevant part:

> The court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint or defense of the losing party; provided, however, that the losing party's attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client.

Section 57.105 was amended, effective October 1, 1999, but that amendment is not relevant to this case, because it was adopted more than three years after this lawsuit was filed. Because the complaint in this case was filed in May of 1996, before the October 1, 1999 effective date of the amendment to § 57.105, the "old" version of § 57.105 would apply, which only allows sanctions where there was a "complete absence of a justiciable issue of either law or fact raised by the complaint." *See Fla. Dep't of Revenue v. Lucignani,* 775 So.2d 996, 997 n. 1 (Fla. 3d DCA 2000) (holding that 1997 version of § 57.105 applies because the DOR's motion for contempt was filed before the effective date of the amendment to that section); *Visoly v. Sec. Pacific Credit Corp.,* 625 So.2d 1276, 1277 (Fla. 3d DCA 1993) (holding that amendment to § 57.105 did not apply retroactively to a case that was commenced before the October 1, 1990 effective date of the amendment).

The question of whether § 57.105 even applies in a case such as this one, where the substantive law of Virginia governs the underlying claims, is one we need not answer. Assuming that § 57.105 does apply to this case, the district court's refusal to award attorney's fees under it is not an abuse of discretion. Given the less than pellucid clarity of the opinion in *Bass* and the fact that the district court twice decided not to grant summary judgment to Toto on the collateral estoppel theory of defense before finally doing so, we cannot say that it was a clear error of judgment for the district court to conclude that there was not a "complete absence of a justiciable issue of either law or fact raised by the complaint," which is the standard under § 57.105.

MBM and McMahan filed their complaint in this case charging Toto with malicious prosecution and tortious interference in May of 1996. The New York state court's decision in *Bass,* which held that the Releasors were entitled to summary judgment against MBM and McMahan on their breach of contract cause of action, was not issued until May of 1998. "The point in time to assess whether the granting of fees pursuant to section 57.105 is appropriate is at the lawsuit's inception, or in other words, at the time of the filing of the complaint." *Haas v. Roe,* 696 So.2d 1254, 1256 (Fla. 2d DCA 1997). Thus, although the decision in *Bass* has collateral estoppel effect and precludes MBM and McMahan from litigating their tortious interference claim here, it did not have that effect until two years after the complaint in this case was filed.

Accordingly, we affirm the district court's holding that there was not a "complete absence of a justiciable issue of either law or fact" at the time the complaint was filed.

## D. FLA. STAT. § 768.79

We review the district court's determinations of state law in a diversity case *de novo. See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Ins. Co. of N. Am. v. Lexow,* 937 F.2d 569, 571 (11th Cir.1991).

The question before us is whether the Supreme Court of Florida would apply its offer of judgment statute, Fla. Stat. § 768.79, to a case where Virginia substantive law governs the underlying claim. Section 768.79 provides, in relevant part:

> (1) In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover reasonable costs and attorney's fees incurred by her or him or on the defendant's behalf pursuant to a policy of liability insurance or other contract from the date of filing of the offer if the judgment is one of no liability or the judgment obtained by the plaintiff is at least 25 percent less than such offer, and the court shall set off such costs and attorney's fees against the award.
>
> ...
>
> (2) ...
>
> An offer must:
>
> (a) Be in writing and state that it is being made pursuant to this section.
>
> (b) Name the party making it and the party to whom it is being made.
>
> (c) State with particularity the amount offered to settle a claim for punitive damages, if any.
>
> (d) State its total amount.
>
> The offer shall be construed as including all damages which may be awarded in a final judgment.
>
> ...
>
> (7)(a) If a party is entitled to costs and fees pursuant to the provisions of this section, the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney's fees.
>
> (b) When determining the reasonableness of an award of attorney's fees pursuant to this section, the court shall consider, along with all other relevant criteria, the following additional factors:
>
> 1. The then apparent merit or lack of merit in the claim.
>
> 2. The number and nature of offers made by the parties.
>
> 3. The closeness of questions of fact and law at issue.
>
> 4. Whether the person making the offer had unreasonably refused to furnish information necessary to evaluate the reasonableness of such offer.

5. Whether the suit was in the nature of a test case presenting questions of far-reaching importance affecting nonparties.

6. The amount of the additional delay cost and expense that the person making the offer reasonably would be expected to incur if the litigation should be prolonged.

Fla. Stat. § 768.79.

Somewhat complicating matters, Florida Rule of Civil Procedure 1.442 (Proposals for Settlement), adopted by the Florida Supreme Court, also covers the subject of offers of judgment.[7] Rule 1.442 is the procedural vehicle which a litigant can use to enforce the right to attorney's fees. The Florida Supreme Court retains final authority to control judicial procedure and, consequently, the provisions of Rule 1.442 supersede any contrary procedures contained in Fla. Stat. § 768.79. Fla. R. Civ. P. 1.442(a).

MBM and McMahan argue that under Florida choice-of-law principles, Virginia law determines whether Toto is entitled to recover the attorney's fees he incurred after his offer of judgment, and for that reason the award of attorney's fees to Toto pursuant to Fla. Stat. § 768.79 was incorrect. (Virginia has no offer of judgment rule or statute.)

*Choice of Law:  General Principles*

Federal jurisdiction in this case is based on diversity of citizenship, and the forum state is Florida. As a federal court exercising diversity jurisdiction, we engage in a two-step inquiry to determine if Fla. Stat. § 768.79 is applicable. *See Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency,* 174 F.3d 1115, 1118 (10th Cir.1999); *Servicios Comerciales Andinos, S.A. v. General Elec. Del Caribe, Inc.,* 145 F.3d 463, 479 (1st Cir.1998). In the first step, we determine whether the matter at hand is procedural or substantive for *Erie R.R. Co. v. Tompkins* purposes. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). If the matter is procedural then federal law will apply;  but if the matter is substantive, then we will apply the law of the forum state. *See Erie,* 304 U.S. at 78, 58 S.Ct. at 822 (a federal court sitting in diversity applies state substantive law). If we do determine that the matter is substantive, we examine the substantive law of the forum state, which includes its choice-of-law rules, to ascertain the applicable substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Boyd,* 174 F.3d at 1118; *Servicios,* 145 F.3d at 479. We note, however, that the two steps are independent of each other, and thus a finding that

---

[7]To complicate matters even further, the Florida legislature enacted another statute governing attorney's fees and costs related to the acceptance or rejection of offers of settlement and judgment, Fla. Stat. § 45.061, although it has been repealed for causes of action accruing after October 1, 1990. *See Timmons v. Combs,* 608 So.2d 1, 3 (Fla.1992).

a matter is substantive or procedural for *Erie* purposes does not compel the same characterization for choice-of-law purposes. *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 726, 108 S.Ct. 2117, 2124, 100 L.Ed.2d 743 (1988); *Boyd,* 174 F.3d at 1118; *Servicios,* 145 F.3d at 479-80.

### a. Is Fla. Stat. § 768.79 Substantive or Procedural for Diversity Purposes?

It is clear that statutes allowing for recovery of attorney's fees are substantive for *Erie* purposes. *See All Underwriters v. Weisberg,* 222 F.3d 1309, 1311-12 (11th Cir.2000) (holding Florida statute which allowed an insured or named beneficiary under an insurance policy to recover attorney fees upon judgment in insured's favor was substantive for *Erie* purposes); *see also MRO Communications, Inc. v. Am. Tel. & Tel. Co.,* 197 F.3d 1276, 1282 (9th Cir.1999) ("In an action involving state law claims, we apply the law of the forum state to determine whether a party is entitled to attorneys' fees, unless it conflicts with a valid federal statute or procedural rule.") (citation omitted); *In re King Resources Co.,* 651 F.2d 1349, 1353 (10th Cir.1981) ("Thus in diversity cases generally, and certainly in this circuit, attorney fees are determined by state law and are substantive for diversity purposes."). As the Supreme Court has stated:

> [I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.

*Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975) (citation and quotation omitted). Accordingly, we turn to Florida's choice-of-law rules to determine whether Toto was entitled to attorney's fees in this tortious interference action.

### b. Florida Choice-of-Law Principles

Several decisions from Florida's intermediate appellate courts have, albeit without discussion of the choice-of-law issue, held that the availability of attorney's fees should be determined under the state law which also governs the underlying claim. In *Montalvo v. Travelers Indem. Co.,* 643 So.2d 648, 651 (Fla. 5th DCA 1994), Florida's Fifth District Court of Appeal, in remanding a case concerning interpretation of two automobile insurance contracts to the trial court, directed that the amount of attorney's fees be determined pursuant to North Carolina law, which controlled the interpretation of the insurance contracts. *But cf. Weatherby Assocs., Inc. v. Ballack,* 783 So.2d 1138, 1143 (Fla. 4th DCA 2001) (affirming trial court's award of attorney's fees pursuant to § 57.105 where former employer's suit became frivolous after filed even though employment contract between parties stated that Connecticut law would apply to any litigation arising out of the employment agreement, and holding that "[t]he choice of law provision in the agreement is irrelevant,

because the trial court did not award attorney's fees pursuant to the agreement. Rather, the court awarded attorney's fees pursuant to section 57.105(1) ... ").

In *Andrews v. Continental Ins. Co.,* 444 So.2d 479 (Fla. 5th DCA 1984), the court held that even though an automobile accident occurred in Florida, Maine had the most significant relationship with the occurrence, and that required application of Maine law about whether to confirm an arbitration award. In remanding to the trial court, the Fifth District Court of Appeal held that whether attorney's fees were allowed should also be decided under Maine law. *Id.* at 483.

Finally, in *Hirsch v. Hirsch,* 369 So.2d 407 (Fla. 3d DCA 1979), Florida's Third District Court of Appeal had previously determined in a related proceeding involving the same parties that New York law applied to a controversy regarding the provisions of a separation agreement, because the parties had specified New York law in that agreement. The appellate court reversed the part of the trial court's judgment increasing support provisions to the wife, and remanded for reconsideration of the award of attorney's fees in light of the reversal on the merits. In doing so, the appellate court noted that attorney's fees could be granted to the wife even though she was unsuccessful in securing a modification, because New York law so provided. *Id.* at 409.

In applying Florida's choice-of-law rules, procedural matters are governed by Florida law, even where another forum's substantive law applies. *See Aerovias Nacionales De Colombia, S.A. v. Tellez,* 596 So.2d 1193, 1194-95 (Fla. 3d DCA 1992) (although New York law applied to substantive matters in wrongful death action, Florida procedural law applied). We believe the Supreme Court of Florida would hold that Fla. Stat. § 768.79 is not a "local law rule[ ] prescribing how litigation shall be conducted." Restatement (Second) of Conflict of Laws § 122. Instead, it would hold that Fla. Stat. § 768.79 modifies the substantive rights of the parties. Accordingly, we believe that the Supreme Court of Florida would not apply Fla. Stat. § 768.79 to a case otherwise governed by the substantive law of Virginia.

In this regard, we find the Florida Supreme Court's discussion of the division of responsibility for enacting substantive and procedural rules informative:

> Article V, section 2(a), of the Florida Constitution provides this Court with exclusive authority to adopt rules for practice and procedure in the courts of this State. The Legislature, on the other hand, is entrusted with the task of enacting substantive law.... The Legislature has modified the American rule, in which each party pays its own attorney's fees, and has created a substantive right to attorney's fees in section 768.79 on the occurrence of certain specified conditions.

*TGI Friday's, Inc. v. Dvorak,* 663 So.2d 606, 611 (Fla.1995). Thus, the task of enacting procedural rules that

apply even where another forum's substantive law governs is confined to the Supreme Court of Florida. *See*

*In re Amendments to Florida Rules of Civil Procedure,* 682 So.2d 105, 105-06 (Fla.1996) (Florida Supreme

Court rejected amendments to Fla. R. Civ. P. 1.442 that were at variance with Fla. Stat. § 768.79 because of

legislative prerogative to enact substantive law); *Timmons v. Combs,* 608 So.2d 1, 2-3 (Fla.1992) ("[I]t is

clear that the circumstances under which a party is entitled to costs and attorney's fees is substantive and that

our rule [Fla. R. Civ. P. 1.442] can only control procedural matters.").[8] But the Florida legislature is entrusted

with the task of enacting substantive laws, for choice-of-law purposes, which it exercised in enacting Fla.

Stat. § 768.79.

Our conclusion that Fla. Stat. § 768.79 is a substantive law, for choice-of-law purposes, is buttressed

by the fact that it is properly viewed as a type of "loser pays" rule or standard, instead of a sanction for

frivolous litigation. In *Servicios,* 145 F.3d at 480-81 n. 9, the First Circuit explained that "loser pays" rules

might be substantive for conflicts purposes:

> Peru's "loser pays" rule, which presumably always provides an award of attorney's fees to the
> prevailing party in a suit, has a much better claim to being "substantive" [for purposes of Puerto Rico
> conflict of laws analysis] than a rule awarding attorney's fees only as a sanction for frivolous
> litigation. After all, a "loser pays" rule could be conceived of as adding an award of attorney's fees
> to the recovery provided by the underlying cause of action.

Loser pays attorney's fees are those awarded to a party merely for prevailing in their suit. *Boyd,* 174 F.3d at

1125-26. Bad-faith attorney's fees, by contrast, are those awarded "against a losing party who acted in bad

faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 1126.

Toto notes, as did the district court, that Florida courts have occasionally described § 768.79 as a

penalty designed to encourage litigants to act reasonably and in good faith in settling lawsuits. *See, e.g.,*

---

[8]*See also Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency,* 174 F.3d 1115, 1120 (10th Cir.1999):

> In the choice-of-law context, most matters are treated as substantive. Only in particular
> instances should a court consider a matter to be procedural. If a case "has foreign
> contacts and ... many issues in the case will be decided by reference to the local law of
> another state," a state should label an issue "procedural" and thus apply its own law only
> when to do so would serve the purpose of efficient judicial administration. Restatement §
> 122 cmt. a. The range of issues relating to efficient judicial administration is narrow and
> includes such items as "the proper form of action, service of process, pleading, rules of
> discovery, mode of trial and execution and costs." *Id.; see generally id.* ch. 6. These are
> matters in which it would be especially disruptive or difficult for the forum to apply the
> local rules of another state, and in which failure to employ another state's law will not
> undermine interstate comity.

(footnote omitted).

*Eagleman v. Eagleman,* 673 So.2d 946, 947 (Fla. 4th DCA 1996); *Goode v. Udhwani,* 648 So.2d 247, 248 (Fla. 4th DCA 1994). That description does not change the fact that § 768.79 provides for a mandatory award of attorney's fees where the offer of judgment is rejected, instead of a discretionary award of attorney's fees designed to sanction frivolous litigation. *See TGI Friday's,* 663 So.2d at 611 (Fla. Stat. § 768.79 provides for award of attorney's fees regardless of reasonableness of offeree's rejection of offer of judgment); *Jordan v. Food Lion, Inc.,* 670 So.2d 138, 140 (Fla. 1st DCA 1996) (Fla. Stat. § 768.79 creates mandatory right to attorney's fees when statutory prerequisites are satisfied, i.e., when a party makes an offer for settlement and that party has recovered a judgment at least 25 percent more or less than the offer). Thus, § 768.79 is a "loser pays" type of rule or standard.[9]

Fla. Stat. § 45.061, which is no longer effective, contained language indicating that an award of attorney's fees was discretionary, because it provided that the court "may" award fees if it determined an offer of judgment had been "rejected unreasonably." However, similar language was not included in § 768.79, which uses the word "shall." Accordingly, attorney's fees must be awarded once the statutory prerequisites are satisfied, regardless of the reasonableness of the offeree's rejection. *Knealing v. Puleo,* 675 So.2d 593, 595 (Fla.1996) ("the right to an award [of attorney's fees and costs] depends only on the amount of the rejected offer and the amount of the later judgment" and "the reasonableness of the plaintiff's rejection is irrelevant to the question of fee entitlement"). As the Florida Supreme Court has noted:

> Under this statute, the legislature did not give judges the discretion to determine whether it is reasonable to entitle qualifying plaintiffs to fees. Rather, it determined for itself that it is reasonable to entitle every offeror who makes a good faith offer (later rejected) ... to an award of fees. Under subsection (7)(b), the court's discretion is directed by the statutory text solely to determining the reasonability [sic] of the *amount* of fees awarded.

*TGI Friday's,* 663 So.2d at 613.

For all of these reasons, we conclude that Florida choice-of-law principles compel the application of Virginia law on attorney's fees. MBM and McMahan allege, and Toto does not disagree, that Virginia law

---

[9]We also note that the Florida Supreme Court's discussion in *TGI Friday's,* 663 So.2d at 611, of the legislature's decision in section 768.79 to modify the traditional American rule that each party pays its own fees strongly suggests that section 768.79 constitutes a "loser-pays" attorney's fees statute. *See Boyd* 174 F.3d at 1126:

> Loser-pays attorney's fees are normally not within a court's inherent power. Instead, they reflect a conscious policy choice by a legislature to depart from the American rule and codify the English rule.... The authority to award bad-faith attorney's fees, though frequently codified, is usually within a court's inherent powers ...

(citation omitted).

does not allow recovery of attorney's fees in this case.

## III. CONCLUSION

For the foregoing reasons, (1) we AFFIRM the district court's grant of summary judgment in favor of Toto on the tortious interference claim, (2) we AFFIRM the district court's decision not to award fees and costs under Fla. Stat. § 57.105 and 28 U.S.C. § 1927, and (3) we REVERSE the district court's decision to award attorney's fees under Fla. Stat. § 768.79.