| | | | |
|---|---|---|---|
| 5 | August 8, 2012 | Objection to Trustee's Motion for a Second Interim Distribution | Objection was overruled by the Court: lack of standing. The Court found the objection "frivolous" as "they were set forth by individuals who I've already found previously lack standing as their claims have been denied" |
| 6 | August 23, 2012 | Motion to Remove Irving H. Picard as Trustee | Motion was denied by the Court |
| 7 | September 19, 2012 | Late Notice of Appeal of Order Approving Second Interim Distribution to Customers | Objected to by Trustee as untimely (replaced by Jan. 7 Motion to File Late Appeal) |
| 8 | November 30, 2012 | Notice of Appeal of this Court's denial of Motion to Remove Irving H. Picard as Trustee | Pending before Judge Koeltl of the District Court (13–cv–00935) |
| 9 | January 7, 2013 | Motion to File Late Appeal of the Order Approving Second Allocation of Interim Distribution to Customers | Appeal was dismissed as untimely by Judge Forrest of the District Court (12–cv–07999) |

**IN RE AMERICAN ROADS LLC, et al.,[1] Debtors.**

**Case No. 13–12412 (BRL)**
**Jointly Administered**

United States Bankruptcy Court, S.D. New York

August 28, 2013

1. The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are: Alabama Black Warrior Parkway, LLC [2479], Alabama Emerald Mountain Expressway Bridge, LLC [2480], Alabama Toll Operations, LLC [2483], American Roads Holding LLC [3194], American Roads LLC [3196], American Roads Technologies, Inc. [2016], Central Alabama River Parkway, LLC [2478], Detroit Windsor Tunnel LLC [1794], DWT, Inc. [7182] and The Baldwin County Bridge Company L.L.C. [8933]. For the purpose of these cases, the service address for the Debtors is: 100 East Jefferson Avenue, Detroit, Michigan 48226.

728

Cleary Gottlieb Steen & Hamilton LLP,
One Liberty Plaza, New York, New York

10006, Telephone: (212) 225–2000, Facsimile: (212) 225–3999, By: Sean A. O'Neal, Louis A. Lipner, Curtis, Mallet–Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178, Telephone: (212) 696–6065, Facsimile: (212) 697–1559, By: Steven J. Reisman, Jason P. Gottlieb, Attorneys for the Debtors and Debtors in Possession.

Hunton & Williams LLP, 200 Park Avenue, 53rd Floor, New York, New York 10166, Telephone: (212) 309–1000, Facsimile: (212) 309–1100, By: Peter S. Partee, Sr., Michael P. Richman Attorneys for Syncora Guarantee Inc.

Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603, Telephone: (312) 853–7000, Facsimile: (312) 853–7036, By: Larry J. Nyhan, Bojan Guzina, Andrew F. O'Neill, Allison Ross Stromberg, 787 Seventh Avenue, New York, New York 10019, Telephone: (212) 839–5300, Facsimile: (212) 839–5599, By: Nicholas K. Lagemann, Attorneys for the Ad Hoc Committee of Bondholders.

Chapter 11

*BENCH MEMORANDUM AND ORDER FINDING THE BONDHOLDERS LACK STANDING TO PARTICIPATE IN THESE CHAPTER 11 PROCEEDINGS*

Burton R. Lifland, United States Bankruptcy Judge

Before the Court is the threshold issue of whether the ad hoc committee of bondholders (the "Bondholders"), consisting of the holders of $162.5 million in principal amount of certain senior secured bonds (the "Bonds") issued by American Roads LLC ("American Roads", and together with its affiliated debtors, the "Debtors"), has standing to participate in these chapter 11 proceedings.

■ The Court confronts a unique financing structure known as an "insured unitranche." Typically, a debtor's creditors will fall into several tranches, each corresponding to different liens. Here, however, all of the secured creditors' claims are secured by the same lien, through the same trustee and collateral agent, on the terms set forth in prepetition financing contracts. Those contracts, therefore, are the sole basis of these creditors' interests and rights, which the creditors have curtailed as part of a *quid pro quo* with Syncora Guarantee Inc. ("Syncora"), the monoline insurer fully securing all of the creditors' claims. That curtailment of rights and interests is clearly enunciated in the relevant contracts in several unambiguous, enforceable "no action" clauses and, therefore, forecloses the Bondholders' participation in these proceedings.

Accordingly, and for the additional reasons set forth below, the Court finds that the Bondholders do **NOT** have standing.

*First,* the Bondholders suggest that they have standing because nothing in any of the relevant financing documents constitutes a waiver of the right to appear and be heard in these proceedings. However, relevant case law and several contractual provisions support finding that the Bondholders have waived their right to appear and that waiver is enforceable.

In these proceedings, the parties agree that the financing documents are governed by New York Law. *See, e.g.,* Supplemental Declaration of Neal Belitsky in Further Support of Confirmation of the Debtors' Joint Prepackaged Chapter 11 Plan (Dkt. No. 113), Ex. I "Collateral Agency Agreement," § 11.06.

■ "No action" clauses are frequently included in indentures to limit suits arising therefrom. Under New York law, such clauses are "strictly construed," and have been "enforced in a variety of contexts in both federal and state courts." *See*

*McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1050–51 (2d Cir.1995) (citation and quotation omitted). Courts applying New York law have repeatedly recognized the importance of enforcing such provisions. *See, e.g., SC Note Acquisitions, LLC v. Wells Fargo Bank, N.A.*, 934 F.Supp.2d 516, 531–32, No. 12–CV–1011, 2013 WL 1233544, at *11 (E.D.N.Y. Mar. 27, 2013) (noting that no-action clauses "protect against the exercise of poor judgment by a single bondholder or a small group of bondholders, who might otherwise bring a suit against the issuer that most bondholders would consider not to be in their collective economic interest"); *Howe v. Bank of New York Mellon*, 783 F.Supp.2d 466, 473 (S.D.N.Y.2011) ("It is well established that a 'no action' clause bars claims by an individual bondholder who fails to comply with the conditions precedent recited therein."); *Friedman v. Chesapeake & Ohio Ry. Co.*, 261 F.Supp. 728, 731 n. 7 (S.D.N.Y.1966) ("If ... every holder of a bond or bonds were free to sue at will for himself and for others similarly situated, the resulting harassment and litigation would be not only burdensome but intolerable.").

Likewise, and notwithstanding the broad standing provisions of Bankruptcy Code section 1109, bankruptcy courts have routinely held that a party lacks standing to take an action in bankruptcy in violation of a "no action" clause. *See, e.g., In re Innkeepers USA Trust*, 448 B.R. 131, 144 (Bankr.S.D.N.Y.2011) (holding plaintiff lacked standing to object to a bid procedure order as it was "contractually bound by the 'no action' clause of the C–6 Servicing Agreement"); *In re Ion Media Networks, Inc.*, 419 B.R. 585, 597 (Bankr. S.D.N.Y.2009) (holding that holder of second lien debt lacked standing to object to

plan confirmation because it "agreed to remain silent in the event of a chapter 11 case"); *In re Enron Corp.*, 302 B.R. 463, 477 (Bankr.S.D.N.Y.2003) (holding that certain creditors did not have standing to bring an adversary proceeding against borrower, since the financial agreements provided that only the collateral agent could file any action or institute any proceeding).

Here, the relevant provisions of the financing documents make clear that the limitations on the Bondholders' collective action rights and the delegation of authority to Syncora are substantial. Indeed, in the main, the characterizations by Debtors' counsel of the relevant contractual provisions are persuasive.[2] The relevant prepetition contracts provide: (1) Syncora controls the enforcement of rights and remedies upon an event of default; (2) Syncora has the authority to give all instructions to the Trustee and the Collateral Agent; (3) Bondholders cannot institute or direct proceedings with respect to the enforcement of the terms of the financing documents without the consent of Syncora; (4) Syncora has been appointed as the "sole holder" and the "sole representative" for all purposes under the financing documents; and (5) Bondholders are precluded from challenging or enforcing the lien without Syncora's consent. As such, "[t]he specific, unambiguous language of several provisions, read in the context of the agreements as a whole," convinces this Court that individual bondholders are precluded from enforcing rights or remedies against the debtor or the collateral. *Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 321, 834 N.Y.S.2d 44, 865 N.E.2d 1210 (2007).

The Bondholders argue that none of the above-mentioned provisions waived their rights to participate in these chapter 11

---

2. For ease of reference, those characterizations are included in a chart in the attached exhibit, which Debtors' counsel prepared and

this Court supplemented with the Bondholders' characterizations of the same provisions. *See* attached Exhibit A.

proceedings. They argue that "no action" provisions are narrowly construed and absent express language forbidding them from objecting to a bankruptcy plan, their actions would fall outside the "no action" provisions. While the Bondholders are correct that "no action" provisions must be clear, the Bondholders are incorrect to suggest that these provisions must contain specific language barring participation in bankruptcy proceedings. *See In re Innkeepers*, 448 B.R. at 144 n. 18 (holding that a provision which barred a certificate holder from "institut[ing] any suit, action or proceeding in equity or at law upon or under or with respect to this Agreement or any Mortgage Loan" unless certain conditions precedents were satisfied, prevented a certificate holder from objecting to a bid procedures order in a bankruptcy case); *see also In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 249 (S.D.N.Y.2004) (intimating that a "no action" provision barring a noteholder from "bring[ing] any action arising out of or relating to [the issuers] obligations to [noteholders]" would suffice to prohibit a noteholder from filing an involuntary petition against the issuer) (quotation omitted). Here, while the "no action" clauses do not specifically mention bankruptcy plans, the provisions unambiguously prevent bondholders from asserting any claims to collateral or enforcing any rights against the Debtors, whether or not the Debtors are in insolvency proceedings. Thus, no matter how the Bondholders characterize their actions and position to avoid falling within the "no action" clauses, they seek to enforce individual rights, remedies and actions, which is directly contrary to their bargained-for contractual agreements delegating and waiving such rights in favor of Syncora and the collateral agent.

■ *Second*, with respect to whether the instant proceedings involve a "Bondholder Reserve Action," the Bondholders have also asserted that the discharge of the Bonds under the Debtors' proposed chapter 11 plan and Syncora's vote in favor of the plan are prohibited without the consent of all bondholders. Specifically, they argue that the discharge and the vote each constitute a "Bondholder Reserved Action" as defined in section 1002 of the base indenture. Therefore, Syncora must obtain consent of the Bondholders in order to discharge the Bonds and vote on the plan. Thus, the Bondholders assert Syncora has not met this obligation, and cannot do so because the Bondholders will not accede to the discharge or Syncora's vote.

However, this argument is unpersuasive. The base indenture provides for "Bondholder Reserved Actions" under section 1002, which is titled "Supplemental Indentures Requiring Consent of Bondholders." That section indicates which "supplemental indentures" constitute those "Bondholder Reserved Actions" that require the approval of all bondholders. These actions are designed to prevent Syncora from unilaterally amending the financing documents in a way specified in the definition, such as by reducing the principal or rate of interest on a bond.

Here, neither the discharge of the Bonds under the plan nor Syncora's vote in favor of the plan is a supplemental indenture requiring bondholder consent. Indeed, neither constitute an amendment to the financing documents or bear on the principal or interest rate of the bonds. Accordingly, the "Bondholder Reserved Action" section, which is intended to prevent such unilateral amendments, is not applicable.

■ *Finally*, with respect to the permissibility of subordination agreements limiting the participation of potential parties to a bankruptcy, the Bondholders argue that even if the Court determines that the financing documents delegate to Syncora the rights to which the Bondholders

are entitled under the Bankruptcy Code, courts have refused to enforce the terms of subordination agreements that are inconsistent with the provisions of the Bankruptcy Code, other than terms affecting the priority of distributions.

Courts, however, have upheld pre-petition inter-creditor agreements waiving a creditor's bankruptcy rights where the creditors are sophisticated parties fully aware of the implications of such a waiver. *See In re Ion Media Networks,* 419 B.R. at 593–97 (upholding a pre-bankruptcy inter-creditor agreement in which a junior lender agreed to waive its right to dispute the validity of the lien where the parties were sophisticated parties who entered into the inter-creditor agreement aware of the implications of that waiver); *see also In re GSC, Inc.,* 453 B.R. 132, 164 n. 47 (Bankr. S.D.N.Y.2011) (finding that in certain circumstances courts have upheld a creditors prepetition waiver of bankruptcy rights); *In re Erickson Retirement Cmtys., LLC,* 425 B.R. 309, 314–16 (Bankr.N.D.Tex.2010) (finding that sophisticated commercial lenders which, pursuant to terms of subordination agreements that barred them from filing any actions or pursuing any remedies to collect on their claims or enforce their rights until senior indebtedness had been paid in full, had knowingly and intelligently waived standing to file motion for appointment of examiner in jointly administered chapter 11 cases); *In re Aero-sol Packaging LLC,* 362 B.R. 43, 47 (Bankr.N.D.Ga.2006) (upholding the assignment of voting rights from a junior lienholder to a senior lienholder in a pre-petition inter-creditor agreement).

Here, the parties are clearly sophisticated and acknowledged this on the record. Moreover, these proceedings do not involve an ordinary multi-tranche financing where secured creditors with different liens on the same property have entered into a subordination agreement to order the priority of their respective property interests. Rather, there is only one lien securing the financing documents. As such, the Bondholders are part of an "insured unitranche," and any rights they may have to monetize or exert control over the collateral are undergirded only by contractual entitlements, not separate property interests.

## CONCLUSION

For the reasons set forth above, the Court finds that the Bondholders do NOT have standing to participate in these Chapter 11 proceedings. The Court, accordingly, DENIES the Bondholders' motion to adjourn the confirmation hearing and OVERRULES the Bondholders' objections to the disclosure statement and confirmation.

**IT IS SO ORDERED.**

EXHIBIT A

I. INDEX OF KEY PROVISIONS REGARDING AUTHORITY OF SYNCORA AND BANK OF NEW YORK TO EXERCISE RIGHTS AND REMEDIES ON BEHALF OF BONDHOLDERS UNDER THE FINANCING DOCUMENTS

| Indenture | Supplemental Indentures | Collateral Agency Agreement | Common Agreement |
|---|---|---|---|
| § 101 | § 4.2 | § 1.01 | § 1.1 |
| § 802 | § 6.1(a) | § 3.03 | § 8.3(a), (d) |
| § 803 | § 6.1(b) | § 7.03 | |
| § 804 | § 6.4 | § 7.04 | |
| § 806 | § 6.5 | § 7.10 | |
| § 807 | | § 7.12 | |
| § 1002 | | | |
| § 1204(a) | | | |

II. KEY PROVISIONS REGARDING AUTHORITY OF SYNCORA AND BANK OF NEW YORK TO EXERCISE RIGHTS AND REMEDIES ON BEHALF OF BONDHOLDERS UNDER THE FINANCING DOCUMENTS

a. LIMITATIONS ON BONDHOLDER COLLECTIVE ACTION RIGHTS

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| Indenture § 802 – Acceleration | Subject to the terms of the Common Agreement and the Collateral Agency Agreement and the rights of any Applicable Insurer pursuant to Section 1204, upon the occurrence of any Event of Default described in Section 8.1 of the Common Agreement known to a Responsible Officer of the Trustee, the Trustee shall, but only upon the written request of the Applicable Insurer (so | Bondholders may not accelerate payment of the Bonds upon the occurrence of an "Event of Default" without the prior written consent of Syncora as the Applicable Insurer. | |

1

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | long as the Applicable Bond Policy is in effect and no Insurer Default has occurred and is continuing) or a Majority of the Bondholders (with the prior written consent of the Applicable Insurer unless an Insurer Default has occurred and is continuing), declare all Bonds then outstanding to be due and payable immediately, and, upon such declaration, all principal and Interest accrued thereon and, to the fullest extent permitted by applicable law, all make whole premium, if any, and all other amounts payable under the Bonds and this Indenture shall become immediately due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by the Issuer. Interest shall accrue on the Bonds to the date of payment (even if after the date of acceleration). | | |
| Indenture § 803 Other Remedies; Rights of Bondholders | Subject to the terms of the Common Agreement and the Collateral Agency Agreement and the rights of the Applicable Insurer pursuant to Section 1204 hereof, upon the continuance of an Event of Default, if so requested by the Applicable Insurer or a Majority of the Bondholders (with the consent of the Applicable Insurer unless an Insurer Default has occurred and is continuing), and if satisfactory indemnity has been furnished to it, the Trustee shall exercise such of the rights and powers conferred by this Indenture, the Security Documents or any other Transaction Document as the Trustee, being advised by counsel, shall deem most effective to enforce and protect the interests of the Bondholders. | Upon the continuance of an "Event of Default," Syncora or a majority of the Bondholders (with Syncora's consent) have the right to direct Bank of New York, in its capacity as the Trustee, to exercise the rights and powers conferred by the Financing Documents. | |
| Indenture § 804 | Subject to the terms of the Common | Syncora or a majority of | |

2

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| Rights of Bondholders to Direct Proceedings | Agreement and the Collateral Agency Agreement and the rights of the Applicable Insurer pursuant to Section 1204 hereof, but anything else in this Indenture to the contrary notwithstanding, the Applicable Insurer (so long as no Insurer Default has occurred and is continuing) or a Majority of the Bondholders (with the consent of the Applicable Insurer so long as no Insurer Default has occurred and is continuing) shall have the right at any time, by an instrument or instruments in writing executed and delivered to the Trustee, to direct the method and place of conducting all proceedings to be taken in connection with the enforcement of the terms and conditions of this Indenture, the Security Documents, the Auction Agent Agreement or any other Transaction Document or for the appointment of a receiver or any other proceedings hereunder or thereunder; provided that such direction shall be in accordance with applicable law, this Indenture, the Common Agreement and, if applicable, the Security Documents, the Auction Agent Agreement or such other Transaction Document, and provided that the Trustee shall be indemnified to its satisfaction. | the Bondholders (with Syncora's consent) have the right to direct the method and place of conducting any proceeding for the enforcement of the terms and conditions of the Financing Documents. | |
| Indenture § 807 – Rights and Remedies of Bondholders | No Bondholder shall have any right to institute any proceeding for the enforcement of this Indenture or any right or remedy granted hereby unless (i) an Event of Default is continuing, (ii) a Responsible Officer of the Trustee is deemed to have notice or knowledge thereof or has been notified as provided in Section 901(d), (iii) a Majority of the Bondholders (with the consent of the Applicable Insurer unless an Insurer Default has occurred and is continuing) shall have made written request to the | Bondholders do not have the right to institute proceedings for the enforcement of the Indenture or any right or remedy granted under the Indenture unless, among other things, the Bondholders (with Syncora's consent) to made written request to | |

3

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | Trustee and shall have afforded the Trustee reasonable opportunity to exercise its powers or to institute such proceeding in its own name, and have offered to the Trustee indemnity satisfactory to it, and (iv) the Trustee shall have failed or refused to exercise its power or to institute such proceeding. Such notice, request, offer of indemnity and failure or refusal shall at the option of the Trustee be conditions precedent to the execution of the powers and trusts of this Indenture, and to any action for the enforcement of this Indenture or of any right or remedy granted hereby; the Holders of the Bonds shall have no right to affect or prejudice the lien of this Indenture by their action or to enforce any right hereunder except in the manner herein provided and subject to the Common Agreement and that proceedings shall be instituted and maintained in the manner herein provided and for the benefit of the Holders of all Bonds then outstanding. Notwithstanding the foregoing, each Bondholder shall have a right of action to enforce the payment of the principal of and premium, if any, and Interest on any Bond held by it at and after the maturity thereof, from the sources and in the manner expressed in such Bond. This paragraph is subject to Section 1204 hereof. | the Trustee. | |
| Supplemental Indentures § 4.2 Rights of Series G-1/G-2 Bondholders | It is acknowledged and agreed that (and each Series [G-1 or G-2] Bondholder, by its acceptance of a Series [G-1 or G-2] Bond, acknowledges and agrees that) no Series [G-1 or G-2] ondholder shall have any right in any manner whatever hereunder, under the Indenture or under the Series [G-1 or G-2] Bonds to (i) surrender, impair, waive, affect, disturb or prejudice the Lien of the Security Documents on any property subject thereto or | Bondholders waive any right to challenge the Lien or enforce any right under the Indenture, the Common Agreement and the Collateral Agency Agreement. | Clauses (i) and (ii) are not relevant to this discussion. The prohibitions in clause (iii) make no reference to any bankruptcy-specific actions and are expressly limited to the enforcement of "any rights under the Indenture." The Indenture, however, makes no reference to any bankruptcy-specific rights and cannot, under any reasonable reading of the document, be interpreted as preventing the Bondholders from objecting to the Plan or from otherwise being heard in these chapter 11 cases. |

4

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | the rights of any other Series [G-1 or G-2] Bondholder, (ii) obtain or seek to obtain priority or preference over any other such Series [G-1 or G-2] Bondholder, or (iii) enforce any right under the Indenture, except in the manner provided herein and/or in the Indenture, the Common Agreement and the Collateral Agency Agreement and for the benefit of all the Series [G-1 or G-2] Bondholders and the Senior Creditors identified in the Common Agreement and the Collateral Agency Agreement, subject in all cases to the provisions of the Indenture, this First Supplemental Indenture, the Common Agreement and the Collateral Agency Agreement. | | |
| Collateral Agency Agreement § 7.04 Remedies of the Secured Parties | (a) Unless otherwise consented to in writing by the Instructing Senior Creditor, no Secured Party, individually or together with any other Secured Parties, shall have the right, nor shall it, exercise or enforce any of the rights, powers or remedies which the Collateral Agent is authorized to exercise or enforce under this Agreement or any of the other Security Documents. <br><br> (b) Each Secured Party agrees that it will have recourse to the Collateral only through the Collateral Agent, that it shall have no independent recourse thereto and that without the prior written consent of the instructions given by the Instructing Senior Creditor, it shall refrain from exercising any rights or remedies under the Financing Documents with respect to the Collateral accorded to such Secured Party upon the occurrence of an Event of Default or an acceleration of the maturities of the Secured | The Secured Parties, including the Bondholders, are precluded from individually exercising any rights, powers or remedies under the Financing Documents with respect to the Collateral and are required to act only through the Collateral Agent unless Syncora expressly consents in writing. | This provision of the Collateral Agency Agreement cannot, under any reasonable reading of the language, be interpreted as prohibiting the Bondholders from objecting to the Plan or from otherwise being heard in these cases. Consistent with the maxim that "no action" clauses must be narrowly construed, this provision merely (i) prohibits the Bondholders from exercising or enforcing any of the rights, powers or remedies which the Collateral Agent is authorized to exercise or enforce under the Collateral Agency Agreement or the other Security Documents and (ii) prohibits the Bondholders from exercising any rights or remedies under the Financing Documents with respect to the Collateral upon the occurrence of an Event of Default. Notably, this language does not prohibit the Bondholders from exercising rights or remedies that have not been specifically delegated to the Collateral Agent, or from exercising any rights or remedies other than with respect to the Collateral. Finally, and perhaps most importantly, nothing in this language bars the Bondholders from objecting to the Plan or exercising any of the other fundamental creditor rights under the |

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | Obligations. | | Bankruptcy Code. |
| Collateral Agency Agreement § 7.10 Consent of Instructing Senior Creditor | Notwithstanding anything to the contrary in any Financing Document, no Senior Creditor or Senior Creditor Representative may, except with the prior consent of the Instructing Senior Creditor (i) enforce any security interest created or evidenced by any Security Document or require the Collateral Agent to enforce any such security interest; (ii) accelerate the maturity of any Senior Indebtedness or exercise any other remedies available upon the occurrence of any Event of Default (including causing the early termination of any Permitted Swap Transaction, other than as provided in clauses (i) or (ii) of Part 1(p) of the Schedule to (a) the Series G-1 Hedging Agreement, and (b) the Series G-2 Hedging Agreement); (iii) sue for or institute any creditor's process (including an injunction, garnishment, execution or levy, whether before or after judgment) in respect of any Senior Indebtedness (whether or not for the payment of money) owing to it under or in respect of any Financing Document (it being understood that the Interest Rate Hedge Counterparty shall have the rights provided to such party under Part 5(cc) of the Schedule to (a) the Series G-1 Hedging Agreement, and (b) the Series G-2 Hedging Agreement); (iv) take any step for the winding-up, administration of or dissolution of, or any insolvency proceeding in relation to, the Company or any Project Subsidiary, or for a voluntary arrangement, scheme of arrangement or other analogous step in relation to the Company or any Project Subsidiary; or (v) apply for any order for an injunction or specific performance in respect | The Secured Creditors, including the Bondholders, agreed to be prohibited from directly taking certain actions without the prior consent of Syncora, including the exercise or enforcement of any rights under the Security Documents, enforcement of any security interest, or taking any steps for the winding-up, dissolution of, or any insolvency proceeding in relation to the Debtors obligated under the Financing Documents. | This provision of the Collateral Agency Agreement is crucial to Syncora's argument because it specifically proscribes the types of actions that the Bondholders cannot take without Syncora's consent. However, nothing in this language even remotely prevents the Bondholders from objecting to the Plan or otherwise being heard in these cases. <br><br> Clauses (i), (iii) and (v) of Section 7.10 of the Collateral Agency Agreement are plainly not relevant to this discussion because the Bondholders are not seeking to (a) enforce any security interest, (b) sue for or institute any creditor's process in respect of the Bonds, or (c) apply for any order for an injunction or specific performance in respect of the Debtors. Clause (ii) prohibits the exercise of "any remedies available upon the occurrence of any Event of Default," but it, too, is irrelevant because the Ad Hoc Committee is not seeking to exercise any remedies that are available to the Instructing Senior Creditor or the Collateral Agent but merely to ensure that the distributions from such exercise are remitted in accordance with the terms of the Financing Documents. Clause (iv), on the other hand, is relevant to bankruptcy but not because it prevents the Bondholders from objecting to the Plan or being heard in these cases, but because it does not do that. What clause (iv) demonstrates is that the parties to the Financing Documents knew how to prohibit the Bondholders from taking certain bankruptcy-relatedactions when they actually intended to do so. In fact, clause (iv) specifically prohibits the Bondholders from commencing a wind-down or insolvency proceeding for the Debtors ("takeany step for the winding up, administration of or dissolution of, or any insolvency proceeding in relation to" the Debtors (emphasis added), but neither this clause nor the rest of Section 7.10 contains any prohibition on |

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | of the Company or any Project Subsidiary in relation to any of the Financing Documents. | | the types of actions that the Bondholders can take in bankruptcy.<br><br>Accordingly, nothing in Section 7.10 can be interpreted as denying standing to the Ad Hoc Committee or any individual Bondholder in these cases. If the parties intended that only the Instructing Senior Creditor or the Collateral Agent would have standing to be heard in a bankruptcy case involving the Debtors, why did they not simply say so? We submit that the answer is because the parties did not intend to build such a restriction into the document.<br><br>Consistent with the requirement that "no action" clauses be strictly construed, the foregoing provisions of the Collateral Agency Agreement cannot, under any reasonable reading of the relevant language, be interpreted as prohibiting the Bondholders from objecting to the Plan or generally participating in these chapter 11 cases. |

b. DELEGATION OF AUTHORITY TO SYNCORA (AS APPLICABLE INSURER, SERIES G-1 AND G-2 BOND CONTROLLING PARTY AND INSTRUCTING SENIOR CREDITOR) AND BANK OF NEW YORK (AS TRUSTEE AND COLLATERAL AGENT)

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| Indenture § 806 Remedies Vested in Trustee | Subject to Section 1204 hereof and the terms of the Common Agreement and the Collateral Agency Agreement, all rights of action (including the right to file proof of claims) under this Indenture or under the Bonds of any series may be enforced by the Trustee without the possession of any such Bonds or the production thereof in any trial or other proceeding relating thereto, and any such suit or proceeding instituted by the | All rights of action under the Indenture or under the Bonds are to be enforced by the Bank of New York, in its capacity as the Trustee. | |

7

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | Trustee shall be brought in its name as Trustee for the Holders of Bonds of all series, or on behalf of the Bondholders of any particular series without the necessity of joining as plaintiffs or defendants any Bondholders. Any recovery of judgment shall be for the equal, ratable and common benefit of the Holders of the Outstanding Bonds, or of the Holders of the Bonds of the particular series, as the case may be, in respect of which a judgment has been entered. | | |
| Indenture § 1204(a) Default and Remedies | (a) For as long as an Applicable Bond Policy remains in effect with respect to any series of Bonds and no Insurer Default shall have occurred and be continuing:<br><br>(i) the Applicable Insurer shall have the sole right to waive Events of Default;<br><br>(ii) the Applicable Insurer shall have the power to control and direct all remedies in the Event of Default; and<br><br>(iii) the applicable series of Bonds shall not be accelerated for any cause without the prior written consent of the Applicable Insurer. | Syncora, as the Applicable Insurer, has the sole right to waive Events of Default and the right to control and direct all remedies upon the occurrence of an Event of Default. Additionally, the Bonds shall not be accelerated without the prior written consent of Syncora. | |
| Supplemental Indenture § 6.1(b) Control | (b) At any time when [Syncora] is the Series [G-1 or G-2] Bond Controlling Party, [Syncora] shall have the right to (i) direct the time, method and place of conducting any proceeding for any remedy available to the Trustee with respect to the Series [G-1 or G-2 | Syncora, as the Series G-1/G-2 Bond Controlling Party has the right to direct the time, method and place of conducting any | This provision is similar in concept to Sections 7.03 of the Collateral Agency Agreement and Section 8.3 of the Common Agreement in that it specifies the types of actions that Syncora may take or direct the Collateral Agent to take with respect to the enforcement of remedies, the giving of certain |

8

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | 2] Bonds, or the exercise of any trust or power conferred on the Trustee with respect to the Series [G-1 or G-2] Bonds, (ii) to grant any consent or waiver under or with respect to the Indenture and/or the Series [G-1 or G-2] Bonds or any other Financing Document or Security Document, (iii) agree to or consent to any amendment or modification to the Indenture, this First Supplemental Indenture and/or any other Financing Document or Security Document and (iv) or direct the Trustee in writing in respect of any other action with respect to the Series [G-1 or G-2] Bonds requiring the consent of the holders of the requisite percentage in aggregate principal amount of the Series [G-1 or G-2] Bonds; provided that (x) [Syncora] may not take any Bondholder Reserved Action with respect to the Series [G-1 or G-2] Bonds, (y) such action by [Syncora] shall not be in conflict with any applicable Law or the terms of the Indenture, this First Supplemental Indenture, the Common Agreement or the Collateral Agency Agreement, and (g) the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such action by [Syncora] or the Indenture. | proceeding for remedies available to the Bank of New York or exercising the powers conferred upon the Bank of New York with respect to the Bonds. Additionally, Syncora, as the Series G-1/G-2 Bond Controlling Party has the right to direct the Bank of New York in writing in respect of actions under the Bonds, which require consent of Bondholders holding a certain percentage of the aggregate principal amount of the Bonds; however, Syncora does not have such rights with respect to certain supplemental indentures that require the consent of both Syncora and all of the Bondholders. | consents or waivers, or the giving of directions to the Collateral Agent. It does not, however, purport to restrict any rights that the individual Bondholders are entitled to under the Bankruptcy Code.<br><br>Consistent with the requirement that "no action" clauses be strictly construed, nothing in this provision can be construed as prohibiting the Bondholders from objecting to the confirmation of the Plan, denying to the Bondholders the right to vote to accept or reject the Plan, or denying them the ability to appear and be heard in these chapter 11 cases. |
| Supplemental Indentures § 6.4 Sole Holder | At any time [Syncora] is the Series [G-1 or G-2] Bond Controlling Party, [Syncora] is hereby irrevocably appointed, and the Trustee and the Issuer hereby acknowledge and consent to the designation of [Syncora], as the "sole holder" (as such term is used in the Common Agreement) of the Series [G-1 or G-2] Bonds and as the sole representative of the Series [G-1 or G-2] Bondholders (acting as "Series [G-1 or G-2] Bondholders" or | The Supplemental Indentures appoint Syncora, in its capacity as the Series G-1/G-2 Bond Controlling Party, as the "sole holder" and "sole representative" of the Bondholders for all purposes under the Supplemental | This is another provision on which Syncora will undoubtedly attempt to rely, but like Section 5.3 of the Supplemental Indentures it cannot, under any reasonable reading of the language, be interpreted as prohibiting the Bondholders from objecting to a plan of reorganization or asserting any other fundamental rights under the Bankruptcy Code.<br><br>As a preliminary matter, the designation of Syncora as the "sole holder" (as such term is used in the |

9

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | "Senior Creditors") for all purposes hereunder and under each other Transaction Document. By its acceptance of a Series [G-1 or G-2] Bond, each Series [G-1 or G-2] Bondholder hereby irrevocably consents and agrees to (and the successive Series [G-1 or G-2] Bondholders, by taking and holding one or more of the Series [G-1 or G-2] Bonds, shall be conclusively deemed to irrevocably consent and agree to) such appointment of [Syncora] as the "sole holder" and representative of the Series [G-1 or G-2] Bondholders at any time when [Syncora] is the Series [G-1 or G-2] Bond Controlling Party. | Indentures and the other Financing Documents. | Common Agreement") pursuant to this provision is meaningless because the term "sole holder" is not used anywhere in the Common Agreement.<br><br>Second, the appointment of Syncora as the "sole representative" of Bondholders for all purposes of the Financing Documents is insufficient, by itself, to deprive the Bondholders of their right to object to confirmation of the Plan or any other fundamental bankruptcy rights. For the reasons discussed above, "no action" clauses cannot be interpreted as waiving fundamental bankruptcy rights in the absence of express contractual language to that effect, and nothing in this provision indicates that Syncora's undefined role as the "sole representative" is intended to deprive the Bondholders of their right to appear and be heard in a bankruptcy case. Furthermore, the designation of Syncora as the "sole holder" and "sole representative" is expressly limited by the language that reads "for all purposes hereunder and under each other Transaction Document" but does not say "under the Bankruptcy Code" or "in connection with any bankruptcy case of the Company." In other words, the "for all purposes" language is expressly limiting language that precludes an expansive reading of the terms "sole holder" and "sole representative" beyond the powers that are explicitly assigned to Syncora under the terms of the Supplemental Indentures and the other Financing Documents. |
| Supplemental Indenture § 6.5 Power of Attorney | The Trustee shall appoint [Syncora] as agent and attorney-in-fact for the Trustee and the Series [G-1 or G-2] Bondholders in any legal proceeding with respect to the Series [G-1 or G-2] Bonds in connection with and to the extent of any payments made by [Syncora] under the Series [G-1 or G-2] Bond Insurance Policy. The Trustee acknowledges that, at | The Bank of New York, as Trustee, is to appoint Syncora as agent and attorney-in-fact for the Bank of New York and the Bondholders in certain legal proceedings. | Like the earlier provisions in Section 5.4 of the Supplemental Indentures, this provision clearly demonstrates the basic flaws in Syncora's argument. First, it shows that the appointment of Syncora as "agent and attorney-in-fact" for the Bondholders is expressly limited to "any legal proceeding with respect to" the Bonds "in connection with and to the extent of any payments |

| Section | Text | Debtors' Description | Bondholders' Description |
|---------|------|---------------------|-------------------------|
| | any time when [Syncora] is the Series [G-1 or G-2] Bond Controlling Party, [Syncora] shall direct all matters relating to the enforcement of the Trustee's and the Series [G-1 or G-2] Bondholders' rights and remedies with respect to the Series [G-1 or G-2] Bonds pursuant to the terms thereof, Article VIII of the Indenture, the Common Agreement or otherwise, and the rights and remedies of the Trustee or any Series [G-1 or G-2] Bondholder against any debtor with respect to a Preference Claim or other claim in connection with and to the extent of any payments made by [Syncora] under the Series [G-1 or G-2] Bond Insurance Policy which is being asserted under any applicable insolvency law, provided that in no event may [Syncora] expose the Trustee to any personal liability with respect to which the Trustee has not been indemnified pursuant to the indemnity referred to in Article IX of the Indenture. | Additionally, the Bank of New York, as Trustee, acknowledges that Syncora shall direct all matters related to the enforcement of the Bank of New York's and Bondholder's rights and remedies with respect to the Bonds. | made by [Syncora] under the [Bond Policies]" (emphasis added). Because Syncora has not made any payments under the Bond Policies and is not seeking to enforce its rights and remedies in connection with and to the extent of such payments, Syncora is not authorized to act as the agent and attorney-in-fact for the Bondholders in these cases.

Similarly, the authority conferred on Syncora in the second sentence (which provides that Syncora "shall direct {…} the rights and remedies of the Trustee or any [Bondholder] against any debtor with respect to a Preference Claim or other claim {…}") is expressly limited to any rights or remedies "in connection with and to the extent of any payments made by [Syncora] under the [Bond Policies] which is being asserted under any applicable insolvency law { …}." In other words, the only time the parties to the Financing Documents agreed to allow Syncora to direct the rights and remedies of the Bondholders against a debtor, they expressly limited such delegation to situations where Syncora has actually made a payment under the Bond Policies and is pursuing the debtor in connection with such payments. Because Syncora has not made any payment under the Bond Policies, this provision cannot be interpreted as delegating to Syncora any rights at all under the facts of this matter, let alone any of the Bondholders' fundamental rights under the Bankruptcy Code.

More importantly, this provision conclusively shows that the Financing Documents do not grant to Syncora even a modicum of authority, much less sole authority, to assert any of the Bondholders' fundamental rights under the Bankruptcy Code. If the parties actually intended to make Syncora the agent and attorney-in-fact for the Bondholders for any and all purposes in a bankruptcy proceeding, |

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | | | they could easily have done so. Had they done so, this limited provision, which merely grants to Syncora limited control with respect to payments it has actually made on behalf of the Bondholders, would be superfluous — but they clearly did not do so. As a result, Syncora's arguments must fail. Furthermore, even if Syncora had made a payment under the Bond Policies, the language of this provision is neither broad enough nor express enough to be read as depriving the Bondholders of their fundamental bankruptcy rights. |
| Common Agreement<br><br>§ 8.3(a), (d) – Remedies | (a) During the period commencing on the date of delivery to the Collateral Agent of the notice described in Section 8.2(a) above and ending on the date of delivery of a Cessation Notice (such period, a "Default Period"), the Instructing Senior Creditor shall have the right to give the Collateral Agent one or more enforcement directions (each an "Enforcement Direction") directing the Collateral Agent to take any or all of the following actions ("Enforcement Actions") on behalf of the Senior Creditors:<br><br>   (i) declare the entire unpaid principal amount of the Senior Indebtedness (together with all accrued and unpaid interest thereon and any other amount then due under the Financing Documents) to be forthwith due and payable, whereupon such amounts shall become and be forthwith due and payable, without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived by the Company, provided that the Instructing Senior Creditor may not give an | Syncora, as the Instructing Senior Creditor, has the right to give the Bank of New York one or more Enforcement Directions directing the Bank of New York to take various actions on behalf of the Senior Creditors, including acceleration of the principal of the Bonds, termination of the Swap Agreements, foreclosure on the Collateral, or enforcement of all remedies available to the Collateral Agent under the Financing Documents or otherwise as a matter of law. | Although Syncora has argued otherwise, this provision of the Common Agreement is not relevant to the present discussion because the Ad Hoc Committee is not seeking to provide any "Enforcement Direction" to the Collateral Agent. Furthermore, the scope of the "Enforcement Actions that" are reserved for the Instructing Senior Creditor and the Collateral Agent to pursue is specifically defined and does not include any bankruptcy-specific actions that the Bondholders could take in a chapter 11 case. Although the language does give the Instructing Senior Creditor the right to direct the Collateral Agent "to enforce all remedies available to the Collateral Agent pursuant to the Financing Documents or otherwise as a matter of Law" (emphasis added), this provision cannot, under any reasonable interpretation of the language, be interpreted as assigning to the Collateral Agent the right of the Bondholders to appear and be heard in a bankruptcy case or to oppose the confirmation of a chapter 11 plan, since neither action constitutes a remedy that is available to the Collateral Agent. Furthermore, Section 8.3 of the Common Agreement pertains to the types of enforcement actions that would, under ordinary circumstances, be precluded by the automatic stay rather than to post-petition actions that are not stayed, such as the filing of an objection |

12

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | Enforcement Direction directing that the Senior Indebtedness be declared forthwith due and payable solely on the basis of an Event of Default under Section 8.1(c) (or any comparable provision of the Insurance and Reimbursement Agreement or any reimbursement agreement with another Approved Monoline) until the date on which the relevant Approved Monoline has paid the relevant demand under the applicable Approved Monoline Insurance Policy;<br><br>   (ii) terminate any Permitted Swap Transactions and confirm the amount of any resulting Permitted Swap Termination Payments and, if any such Permitted Swap Termination Payment is due and payable to the Company, enforce the collection thereof from the relevant Permitted Swap Counterparties; and<br><br>   (iii) foreclose on any or all of the Collateral or proceed to enforce all remedies available to the Collateral Agent pursuant to the Financing Documents or otherwise as a matter of Law.<br><br>(d) Nothing in this Section 8.3 shall prevent the Collateral Agent or the Instructing Senior Creditor from taking any action permitted pursuant to this Agreement or any other Financing Document with respect to the | | to confirmation of a plan of reorganization |

13

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | Collateral to preserve and protect the Senior Creditors' rights in, or to prevent any diminution in the value, utility or condition of, such Collateral, so long as such action does not, prior to the taking of any Enforcement Action and after the cessation of the applicable Default Period, materially interfere with the quiet enjoyment or use by the Company or any Project Subsidiary of the Project. | | |
| Collateral Agency Agreement § 3.03 Authorization | Each Secured Party and Senior Creditor Representative party hereto hereby authorizes the Collateral Agent to (a) execute, deliver and perform each of this Agreement, the Co Collateral Agency Agreement and each other Financing Document to which the Collateral Agent is or is intended to be a party, (b) exercise and enforce any and all rights, powers and remedies provided to the Collateral Agent by this Agreement and each other Financing Document to which the Collateral Agent is a party, and (c) take any other action under this Agreement and each other Financing Document to which the Collateral Agent is a party which it shall deem advisable in the best interests of the Secured Parties. Notwithstanding the foregoing, the Collateral Agent shall not commence an Enforcement Action or exercise its rights under the Guaranty, in each case, except in accordance with instructions given by the Instructing Senior Creditor; provided, that if the Collateral Agent is prohibited by any court order or applicable law from commencing any Enforcement Action, the Collateral Agent shall seek the requisite authority to commence such Enforcement Action until such authority is obtained. All decisions with respect to the | The Secured Parties, including the Bondholders, authorized the Bank of New York to exercise and enforce any and all rights, powers and remedies provided to the Bank of New York under each of the Financing Documents and to take any other action deemed advisable in the best interests of the Secured Parties. Additionally, Syncora, as the Instructing Senior Creditor, is to consent to decisions with respect to types of "Enforcement Actions" taken and actions related to the prosecution and settlement of any such "Enforcement Action." | |

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | type of Enforcement Action which is to be commenced shall be made by, and all actions with respect to prosecution and settlement of such Enforcement Action shall require the consent of, the Instructing Senior Creditor, and the Collateral Agent shall not be required to take any Enforcement Action in the absence of any such written direction. The Collateral Agent will use its commercially reasonable efforts to pursue diligently the prosecution of any Enforcement Action, which the Collateral Agent is authorized or directed to initiate pursuant to this Agreement. | | |
| Collateral Agency Agreement § 7.03 Enforcement of Remedies | Upon the occurrence and during the continuance of any Event of Default, the Collateral Agent shall, subject to the other provisions of this Agreement, take such Enforcement Action and shall exercise its rights under the Guaranty with respect to such Event of Default as shall be directed by the Instructing Senior Creditor (a "Direction Notice"). Upon receipt by the Collateral Agent of a Direction Notice, the Collateral Agent shall seek to enforce the Security Documents and to realize upon the Collateral in accordance with such Direction Notice; provided, however, that the Collateral Agent shall not be obligated to follow any Direction Notice if the Collateral Agent reasonably determines that such Direction Notice is in conflict with any provisions of any applicable Law or any Security Document, and the Collateral Agent shall not, under any circumstances, be liable to any Secured Party, the Company or any other Person for following a Direction Notice. At all times, if the Instructing Senior Creditor advises the other Secured Parties | Upon the occurrence and continuance of an "Event of Default," the Bank of New York, as directed by Syncora as the Instructing Senior Creditor, shall take "Enforcement Actions" and shall exercise its rights under the Guaranty. | |

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | that it wishes to proceed in good faith with respect to any Enforcement Action or any exercise of rights under the Guaranty, each of the Secured Parties will cooperate in good faith with respect to such Enforcement Action. | | |
| Collateral Agency Agreement § 7.12 Collateral Agent May File Proofs of Claim | In the case of pendency of any receivership, insolvency, liquidation, bankruptcy, reorganization, arrangement, adjustments, composition or other similar judicial proceedings relative to the Company, any Project Subsidiary or the Collateral, the Collateral Agent (irrespective of whether the principal of the Senior Indebtedness shall then be due and payable) shall, upon receipt of written directions from the Instructing Senior Creditor, be entitled and empowered by intervention in such proceeding or otherwise, (i) to file and prove a claim for the whole amount of the applicable Credit Party's obligations to the Senior Creditors owing and unpaid and to file such other papers or documents as may be necessary or advisable in order to have the claims of the Collateral Agent (including any claim for the reasonable compensation, disbursements and advances of the Collateral Agent, in its individual or trust capacity, its agents and counsel) and the Senior Creditors allowed in such judicial proceeding and (ii) to the extent permitted by Law, to collect and receive any moneys or other property or assets payable or deliverable on any such claims and to distribute the same in accordance with the terms hereof. Any custodian, receiver, assignee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by the | The Bank of New York, at the direction of Syncora as the Instructing Senior Creditor, may file and prove a claim for the full amount of all secured claims under the Financing Documents, and, to the extent permitted by law, may collect and receive moneys or assets payable or deliverable on such claims. | |

16

| Section | Text | Debtors' Description | Bondholders' Description |
|---|---|---|---|
| | Instructing Senior Creditor to make such payments to the Collateral Agent. | | |

c. RELEVANT DEFINITIONS

| Term | Section | Definition |
|---|---|---|
| "Applicable Insurer" | Indenture § 101 – Definitions | "Applicable Insurer" means, with respect to any applicable series of Bonds, the Person or Persons, if any, providing an Applicable Bond Policy with respect to such series of Bonds, in accordance with the terms of this Indenture, the indenture supplemental relating to such series of Bonds, the Applicable Bond Policy for such series of Bonds and the Applicable Insurance and Reimbursement Agreement related to such Applicable Bond Policy. |
| "Bondholder Reserved Action" | Indenture § 1002 Supplemental Indentures Requiring Consent of Bondholders | Exclusive of supplemental indentures permitted by Section 1001 hereof and subject to the terms and provisions contained in this Section, and not otherwise, the Applicable Insurer (if no Insurer Default has occurred and is continuing) or the Holders of not less than a majority in aggregate principal amount of the Outstanding Bonds of an affected series (with the consent of the Applicable Insurer, unless an Insurer Default has occurred and is continuing), shall have the right, from time to time, anything contained in this Indenture to the contrary notwithstanding, to consent to and approve the execution by the Issuer and the Trustee of such other indenture or indentures supplemental hereto as shall be deemed necessary and desirable for the purpose of modifying, altering, amending, adding to or rescinding, in any particular, any of the terms or provisions contained in this Indenture or in any supplemental indenture; provided, however, that nothing in this Section or in Section 1001 hereof contained shall permit, or be construed as permitting (without the consent of the Applicable Insurer (unless an Insurer Default has occurred and is continuing) and the Holders of each Outstanding Bond) (collectively, the "Bondholder Reserved Actions"): <br><br>(a) a reduction in the principal amount of, or a change in the fixed maturity of, any Bond of such series, or a change of the due date for any payment of principal thereof, or an alteration or waiver any of the provisions with respect to the purchase or redemption of such Bonds; |

17

| Term | Section | Definition |
|------|---------|------------|
| | | (b) a reduction in the rate of or a change in the time for payment of interest, including default interest, on any Bond of such series or reduction of any premium (including the make whole premium, if any) payable upon the redemption thereof;<br><br>(c) a privilege or priority of any series of Bonds or Bonds over any other series of Bonds or Bonds;<br><br>(d) changing the currency in which any Bond of such series is payable other than to that stated in such Bonds; or<br><br>(e) changing the foregoing amendment and waiver provisions of this Section 1002 (other than to provide that certain other provisions of this Indenture and/or the Bonds cannot be modified or waived without the consent of each Bondholder with respect to each affected series of Bonds) or reduce the percentage of Bonds the Bondholders of which are required to consent to any such supplement, amendment, waiver or modification. |
| "Instructing Senior Creditor" | Common Agreement § 1.1 – Defined Terms Generally | "Instructing Senior Creditor" means, as of any date of determination, the Insurance Company, unless as of such date of determination, an Insurer Disqualification Event shall have occurred and be continuing as of such date, in which case "Instructing Senior Creditor" shall mean, the Senior Creditors holding (or the Person or Persons representing the Senior Creditors with the power to vote) the majority in aggregate principal amount of all outstanding Senior Indebtedness voting as a single class on such date (treating, for this purpose, each Accreting Swap as having an outstanding principal amount equal to the Settlement Amount related to the deferred and capitalized portion of such Accreting Swap that would be payable by the Company to the respective Permitted Swap Counterparties if such swap was being terminated on such date). The phrase "the Person or Persons representing the Senior Creditors with the power to vote" as used in this definition with respect to each Category of Senior Indebtedness, shall mean the "Controlling Party" or other Person in respect of such Category of Senior Indebtedness (including any applicable Approved Monoline (which may include the Insurance Company with respect to any Category of Senior Indebtedness)) that under the relevant Financing Documents has the right to (i) direct the time, method and place of conducting any proceeding for any remedy available to the Senior Creditor or Senior Creditor Representative with respect to the applicable Category of |

18

| Term | Section | Definition |
|------|---------|------------|
| | | Senior Indebtedness, or the exercise of any trust or power conferred on such Senior Creditor or Senior Creditor Representative with respect to the applicable Category of Senior Indebtedness, (ii) grant any consent or waiver under or with respect to the relevant Financing Documents, (iii) agree to or consent to any amendment or modification to the relevant Financing Documents and (iv) direct the Senior Creditor or Senior Creditor Representative in writing in respect of any other action with respect to such Category of Senior Indebtedness requiring the consent of the Senior Creditors holding the requisite percentage in aggregate principal amount of such Category of Senior Indebtedness. |
| "Senior Creditor" | Collateral Agency Agreement § 1.01 Certain Defined Terms | "Senior Creditors" means the holders, from time to time, of Senior Indebtedness and any indenture trustee, fiscal agent or other agent or Person acting on behalf of the holders of any Senior Indebtedness; provided that the trustee, agent or other Person or Persons designated as the sole holder of all Senior Indebtedness under any Transaction Document for such purposes shall be authorized to represent all other holders of Senior Indebtedness thereunder in connection with the determination and exercise of any voting or other rights or the taking of any other action under such Transaction Document, and if such trustee, agent or other Person or Persons ceases to be such trustee, agent or designated sole holder under such Transaction Document, it shall, in accordance with the terms of the applicable Transaction Document, designate another Person or Persons to be its successor representative for purposes of the Transaction Documents. |
| "Senior Creditor Reserved Action" | Common Agreement § 1.1 Defined Terms Generally | "Senior Creditor Reserved Action" means (i) in the case of any Bonds, each Bondholder Reserved Action, (ii) in the case of any Permitted Swap Transaction, (A) any amendment or modification of the master ISDA agreement, schedule or confirmation relating to the Interest Rate Hedging Agreements or (B) each Party A Reserved Action (as such term is defined in each relevant master ISDA agreement) with respect to each such Permitted Swap Transaction entered into in connection with the Series G-1 Bonds or the Series G-2 Bonds, as the case may be, (iii) in the case of any other Senior Indebtedness, (x) any reduction in the principal amount of, or a change in the fixed maturity of, such Senior Indebtedness, or a change of the due date for any payment of principal thereof, or an alteration or waiver of any of the provisions with respect to the purchase, redemption or prepayment of such Senior Indebtedness, or (y) any reduction in the rate of or a change in the time for payment of interest, including default interest, on such Senior Indebtedness or any reduction of any premium (including the make-whole premium, if any, |

19

| Term | Section | | Definition |
|------|---------|---|------------|
| | | | payable upon the redemption or prepayment thereof, provided that amendments or deemed adjustments to any payment schedule with respect to any such Senior Indebtedness to reflect any partial redemption or prepayment thereof shall not constitute Senior Creditor Reserved Actions. |
| "Series [G-1 or G-2] Bond Controlling Party" | Supplemental Indentures § 6.1(a)  Control | | "Series [G-1 or G-2] Bond Controlling Party" means, with respect to the Series [G-1 or G-2] Bonds, as of any date of determination, (i) [Syncora], unless (A) an Insurer Default (other than pursuant to clause (d) of the definition thereof) shall have occurred and be continuing, (B) the Insurer Termination Date shall have occurred or (C) XL shall have delivered to the Trustee a notice of resignation as the Series G-1 Bond Controlling Party, and (ii) otherwise, the holders of a majority in aggregate principal amount (or other applicable percentage required for any action of the Series G-1 Bondholders) of the Outstanding Series G-1 Bonds on such date. |

20