■ DWIGHT P. BOSTWICK, Appellant, v CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK NEW YORK BRANCH, Formerly Known as CALYON NEW YORK BRANCH, et al., Respondents. [53 NYS3d 277]—

Judgment, Supreme Court, New York County (Barbara Jaffe, J.), entered September 28, 2016, dismissing the amended complaint, unanimously reversed, on the law, without costs, and the amended complaint reinstated to the extent indicated herein. Appeal from order, same court and Justice, entered on or about April 28, 2016, which granted defendants' motion to dismiss the amended complaint for failure to state a cause of

action, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

This action stems from defendants' conduct in a bankruptcy proceeding involving plaintiff's entities, which are the debtors in that proceeding. Plaintiff is the successor trustee of the GSC Liquidating Trust, which is composed of a group of affiliated entities (GSC entities), some of which borrowed substantial sums of money from lenders, including defendants, which held a minority position in the main secured loan. In order to secure the loan, the GSC entities pledged collateral composed of almost all of their assets, and entered into a credit agreement and a security agreement with the creditors; defendants are among the secured creditors.

Section 6.1 of the security agreement states: "[T]his Agreement may be enforced only by the action of the Collateral Agent . . . acting upon the instructions of the Required Banks[1] . . . [N]o other Secured Creditor [i.e., no Secured Creditor other than the Collateral Agent acting on the instructions of the Required Banks] shall have any right individually to seek to enforce or to enforce this Agreement or to realize upon the security to be granted hereby."

Section 7.1 (a) of the Security Agreement provides in pertinent part: "Each Grantor[2] . . . agrees to (i) pay all reasonable out-of-pocket costs and expenses of the Collateral Agent and each other Secured Creditor in connection with the enforcement of this Agreement, and, after an Event of Default shall have occurred and be continuing, the protection of the rights of the Collateral Agent and each other Secured Creditor hereunder . . . and (ii) . . . indemnify . . . and hold the Collateral Agent [and] each other Secured Creditor . . . harmless from any and all liabilities, obligations, damages, . . . claims, . . . actions, suits, judgments and any and all costs, expenses or disbursements . . . of whatsoever kind and nature . . . in any way relating to or arising out of this Agreement . . . or any other document executed in connection herewith . . . or in any way connected with the administration of the transactions contemplated hereby . . . or the enforcement of any of the terms of, or the preservation of any rights under any thereof, or in any way relating to or arising out of the . . . sale . . . or other disposition . . . of the Collateral . . . ; provided that . . . no Secured Creditor . . . shall be indemnified . . . for losses, damages or liabilities to the extent caused by the bad faith . . . or willful misconduct of any such Indemnitee."

---

1. "Required Banks" means, essentially, the majority lender.
2. "Grantor" refers to each GSC entity.

In 2009 the GSC entities defaulted on the loan, and in 2010 they filed for bankruptcy. At the time the GSC entities filed for bankruptcy, the defendants as minority lenders acknowledged that any disputes they had with the majority lender—nonparty Black Diamond Capital Management, LLC—were intercreditor issues that did not belong in bankruptcy court (*see In re GSC, Inc.*, 453 BR 132, 185 [SD NY 2011]).

Following an unsuccessful attempt at reorganization, an auction of the assets was planned. The GSC entities and the collateral agent then agreed on bidding procedures for the auction that would allow for individual lenders to place bids. Defendants objected to the auction and bidding procedures and asked the bankruptcy court to delay the sale. Although the objections were ultimately resolved without court intervention after the parties engaged in discovery and negotiations, plaintiff alleges that defendants' objection caused them to incur substantial attorney and financial advisor fees.

After the bankruptcy court approved the final bidding procedures, a financial advisor hired by the GSC entities determined that allowing certain bidders—especially Black Diamond and the collateral agent—to submit joint bids on the assets would provide for more competitive bids. At the same time, the advisor recognized that there was a risk that such a joint bid could result in the allocation of a greater percentage of assets to Black Diamond, which would be to defendants' detriment.

For that reason, before the court permitted any such joint bids, the issue was discussed with defendants, who on October 27, 2010 executed a letter agreement consenting to the modification of the bidding procedures to include joint bidding. In the letter agreement, defendants reserved all claims and causes of action that they might have against the collateral agent and Black Diamond.

On October 29, 2010, the GSC entities determined that the joint Black Diamond/collateral agent bid was the winning bid, as it provided the greatest value to the bankruptcy estates.

That same day, defendants filed an emergency motion in bankruptcy court to disqualify Black Diamond's bids. The bankruptcy court denied the motion, noting that the intercreditor disputes should be heard in state court.

Not long thereafter, defendants filed multiple objections to the sale of assets in bankruptcy court, complaining again of the bid procedures, including the permitting of joint bids. Further discovery was conducted in connection with the objections, delaying the approval of the sale of assets and allegedly causing the GSC entities to incur significant expenses.

In 2012, the GSC Liquidating Trust, created under a plan of reorganization, was confirmed by the bankruptcy court; it is the successor to the GSC entities' interests.

Defendants separately moved for the appointment of a Chapter 11 trustee, which the bankruptcy court granted. The trustee's fees and his counsel's fees were paid from the GSC entities' estates.

The Chapter 11 trustee also concluded that the joint bid was the best offer. However, defendants filed their own plan of reorganization, to which the Chapter 11 trustee objected. This resulted in additional discovery, briefing, and a hearing, after which the bankruptcy court approved the trustee's plan to sell the assets.

Plaintiff commenced this action seeking money damages for defendants' alleged breach of the security agreement and letter agreement, which it is alleged caused plaintiff to incur millions of dollars in additional costs for the administration of the bankruptcy, including fees and costs for his counsel, for the Chapter 11 trustee and his counsel, and for the fees and expenses of a financial consultant. Defendants moved to dismiss the amended complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7).

The first cause of action alleges that defendants violated section 6.1 of the security agreement by seeking to enforce the agreement during the bankruptcy case because that section allows only the collateral agent to enforce the agreement. Defendants' contention that they did not seek to enforce the agreement during the bankruptcy proceedings is unavailing (*see In re American Rds. LLC*, 496 BR 727, 731 [SD NY 2013]).

Further, section 7.1 (a) of the agreement bars only part of plaintiff's first cause of action. That section provides, in relevant part, that defendants will be held harmless for losses, damages or liabilities unless such liabilities are caused by their "bad faith" or "willful misconduct." This Court can consider plaintiff's argument that defendants acted in bad faith, even though it was not raised before the motion court, because "[w]hether the amended complaint pleads a necessary element of [a] claim is a pure issue of law appearing on the face of the record that may be considered for the first time on appeal" (*see Basis Yield Alpha Fund Master v Morgan Stanley*, 136 AD3d 136, 141 n 4 [1st Dept 2015]). Here, the amended complaint sufficiently alleges that defendants acted in bad faith by trying to block the collateral agent's sale of GSC's assets (*see Banc of Am. Sec. LLC v Solow Bldg. Co. II, L.L.C.*, 47 AD3d 239, 242, 245 [1st Dept 2007], *appeal withdrawn* 16 NY3d 796 [2011]).

However, the motion court correctly dismissed the remaining portions of the first cause of action. The documentary evidence shows that defendants had a good faith basis to object to the original bidding procedures, i.e., that the procedures were contrary to the security agreement. In addition, the decision in the bankruptcy case shows that defendants had a good faith basis to move for the appointment of a Chapter 11 trustee (*see In re GSC*, 453 BR at 147, 185).

To the extent defendants breached in bad faith, damages can include the attorneys' fees plaintiff's predecessors incurred in the bankruptcy case (*see Cefali v Buffalo Brass Co., Inc.*, 748 F Supp 1011, 1027 [WD NY 1990]; *see also In re Ion Media Networks, Inc.*, 419 BR 585, 590 n 4 [SD NY 2009], *appeal dismissed* 480 BR 494 [SD NY 2012]; *McMahan & Co. v Bass*, 250 AD2d 460, 461 [1st Dept 1998], *lv dismissed in part, denied in part* 92 NY2d 1013 [1998]).

Plaintiff is not barred from proceeding in this action, because section 6.1 of the security agreement is best characterized as a collective enforcement scheme and not a covenant not to sue. In any event, allowing plaintiff to sue will not exculpate him[3] or his predecessors from wrongdoing. Neither plaintiff nor his predecessors are being accused of wrongdoing (*cf. Collins & Aikman Prods. Co. v Sermatech Eng'g Group*, 297 AD2d 248, 249-250 [1st Dept 2002] [contract causes of action dismissed where, among other things, the documents contained no express covenant not to sue, and such covenants are to be narrowly construed because they have the effect of exculpating a party from its own wrongdoing]). Nor would public policy be violated by allowing plaintiff to sue (*see Ion Media*, 419 BR at 595).

Plaintiff's second cause of action states a claim that defendants breached the covenant of good faith and fair dealing implied in the October 27, 2010 letter agreement by, among things, injuring GSC's right to receive the fruits of that agreement (*see generally 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002]). A reasonable person would be justified in understanding that the letter agreement included an implied promise that defendants would bring any claims against the collateral agent and Black Diamond in state court rather than bankruptcy court (*see id.*). Defendants had acknowledged from the outset of the bankruptcy proceedings that intercreditor disputes did not belong in bankruptcy court. Further, implying such a covenant would not be inconsistent with other terms of the letter agreement (*see id.*).

---

**3.** Effective May 28, 2016, Dwight P. Bostwick succeeded Barbara S. Jones as trustee of the GSC Liquidating Trust.

Section 7.1 (a) of the security agreement does not bar plaintiff's claim for breach of the implied covenant. The amended complaint explicitly alleges that defendants acted in bad faith in connection with the letter agreement.

We have considered defendants' remaining arguments and find them unavailing. Concur—Tom, J.P., Moskowitz, Feinman, Gische and Kapnick, JJ.